GEORGE FITZHUGH AND OTHERS, *vs.* W. McPHERSON, A. D. B. N. OF LEWIS NETH.—*December* 1845.

In 1791, G conveyed an estate to W, in trust, and by way of mortgage, to secure D a sum of, &c., then due and owing from G to D. After this, W conveyed the same estate to the three children of G, who, in 1805, conveyed it to R, *executrix of D*, to secure the original debt, and a further sum, with interest. These debts were assigned by R to B, in 1806, and by him to N, in 1812. In 1822, G, and two of his children, executed a bond to

*N*, for the sum of, &c. the mortgage debt. This sum was composed of the two principal debts, with interest added from their dates, after allowing various credits for interest, to the time of the assignment to *B*, in 1806, and then with interest on the aggregate as principal, allowing intermediate credits less than the interest, to the date of the second assignment to *N*, in 1812; at which time, the interest was again added to the principal, and interest upon that aggregate to 1822, when the bond to *N*, was given for the whole sum. The bill charged a concurrence of the three children of *G*, in the bond of 1812, and as to the one who did not sign it, there was a decree, *pro confesso*. HELD : that as in 1806, interest had accrued on the mortgage debt, there was no objection to converting it into principal at the time of the assigment to *B* ; and as interest had accrued to him, there was no objection in converting it, also, into principal, at the time of the assignment to *N*, and that, therefore, the bond taken in 1822, was not usurious, and was evidence of the debt due under the mortgage, which would not be reduced by excluding the interest, or the interest added to the principal.

Where interest has once accrued, it becomes a debt, and there is no longer any objection to an agreement *inter partes*, that it shall be considered principal, and carry interest.

Defensive averments in an answer, not responsive to a bill, unsupported by proof, are disregarded at the hearing.

Upon a decree *pro confesso*, it is an established principle, that the allegations of the bill are to be received as true, as to those parties against whom the decree passed.

Where a bill charged, that a complainant was entitled to the mortgage debt, with interest thereon, this averment authorises the recovery of the debt, with either simple or compound interest, as appears to be just upon all the circumstances of the case.

APPEAL from the Court of Chancery.

This cause was before this court at June term 1837, and is reported in 9 *G. & J.*, 51.

The statement of the appellee's counsel, ( *T. S. Alexander, Esq.*,) is adopted by the reporter, as fully stating the condition of the cause.

On the 10th October 1791, *George Fitzhugh, the elder*, conveyed unto *Walter Dulany*, certain real and personal estates, in trust, and by way of mortgage, amongst other things, to secure to *Daniel Dulany* the sum of £230, then due and owing from *Fitzhugh* to *Daniel Dulany*.

Some time after, *Walter Dulany* conveyed the above trust estates to *Mary Fitzhugh, George Fitzhugh, Jr.*, and *Daniel D. Fitzhugh*, children of the above named *George*, who, on the 27th April 1805, conveyed the same property to one *Re-*

*becca Dulany*, and the above named *Walter Dulany*, in trust, or by way of mortgage, amongst other things, to secure unto the said *Rebecca*, as executrix of the before named *Daniel Dulany*, then deceased, the payment of the aforesaid sum of £230, and the further sum of £400, with interest, which was admitted to be then due from the grantors to the said *Rebecca*.

The original of the latter conveyance was filed in the cause, with endorsements thereon :—

*First.* Of an assignment by *Rebecca Dulany*, of all her interest therein to *Thomas Buchanan*, dated 11th December 1806 ; and

*Secondly.* An assignment by *Thomas Buchanan*, of all his interest therein to *Lewis Neth*, which is dated 2nd March 1812.

On the 22nd April 1822, a settlement was made between *Lewis Neth*, and *George, Daniel*, and *Mary Fitzhugh*, of the balance due on the foregoing security; and the same being adjusted at the sum of $5915, the said *George Fitzhugh, Daniel D. Fitzhugh*, and *Mary Fitzhugh*, executed their joint and several bond to the said *Lewis Neth*, to secure the payment of the said balance, with interest from the date of the settlement.

On the 26th January 1825, *George Fitzhugh, Daniel D. Fitzhugh*, and *Mary Fitzhugh*, executed and delivered to *Lewis Neth*, another instrument of writing, wherein it is stated, that "on the 27th day of April 1805, a deed of mortgage was executed by *Mary Fitzhugh, George Fitzhugh*, and *Daniel D. Fitzhugh*, to *Rebecca Dulany*, and *Walter Dulany*, among other things, to secure the payment of the debt, before mentioned, to *Rebecca Dulany*, and that the same mortgage and debt was afterwards assigned by the attorney of *Rebecca Dulany*, to *Thomas Buchanan and wife*, and by the said *Buchanan* to *Lewis Neth*. And that the mortgagors had lately had a settlement of the said debt, and ascertained the balance due thereon to the said *Neth*, as assignee, and for said balance, being $5915, did, on the 22nd April 1822, execute their bond to said *Neth*. It is therefore acknowledged, that the money due on said bond, is the sum now due on account of the debt first mentioned, and that the mortgaged premises are now answerable for the same."

*Lewis Neth,* afterwards, died intestate, leaving *Lewis Neth, Jr.,* his only son and heir at law, who also became his administrator; and on his death, administration *de bonis non,* on the estate of his father, was granted to *Samuel Maynard.*

On the 6th April 1833, *Samuel Maynard,* as *administrator de bonis non* of *Lewis Neth,* the father, filed his bill in the Court of chancery against *George Fitzhugh, Mary Fitzhugh,* and *Daniel D. Fitzhugh,* and the *President and Directors of the Bank of Maryland,* for a foreclosure and sale of the mortgaged premises. The bill first sets out the mortgage from *George Fitzhugh, the elder,* (whom it supposes is dead,) to *Walter Dulany;* the conveyance from *Walter Dulany* to *Mary Fitzhugh, George Fitzhugh, Jr.,* and *Daniel D. Fitzhugh;* and the mortgage from those last mentioned grantees, to *Walter Dulany* and *Rebecca Dulany.*

It next charges, that the debts secured by said mortgages, have become satisfied, and the trusts thereby created, have been fulfilled; saving only, and excepting in so far as the same relates to the sums of £230, and £400, with interest, which were due to the said *Rebecca Dulany;* and charges the assignment of the same debts, as before stated, to *Lewis Neth;* the settlement between the assignee and the last named mortgagors; and the execution by them of the bond and the agreement, before mentioned. It charges further, that a subsequent mortgage of the same premises, has been made to the *President and Directors of the Bank of Maryland,* by some or all of the other defendants; and they are, therefore, made defendants to the bill.

On the 10th September 1833, *Daniel D. Fitzhugh* filed his answer, and thereby admits the execution of the mortgages of 1791, and 1805. He denies, that the debts secured by the same mortgages, have been paid, and the trusts thereby created, fulfilled: and, on the contrary, avers, that the debt in the first mortgage, stated as being due to *Upton Scott,* is still due, with interest thereon, from some time in the year 1809; and that the debt secured by the second mortgage, to be paid to *Mary Fitzhugh,* is still due and unpaid, with a large amount of interests. He admits the assignment of the claims of *Rebecca Dulany* to

*Lewis Neth,* as before stated; but insists, that the interest on the debt of £400, has been paid up to the 31st March 1810. He admits, that in the year 1822, he, with *Mary Fitzhugh,* and *George Fitzhugh, the elder,* who is charged to be yet alive, came to a settlement with *Lewis Neth,* and gave their bond to him for $5915, they then supposing that to be the amount due; but the defendant since believes there was a considerable mistake made in the calculation, and that upon an examination into the matter, it will be found that a much less sum was due. He admits the execution of the agreement, which he avers, was signed by *George Fitzhugh, the elder,* and not by *George Fitzhugh, Jr.*

30th December 1833, the complainant filed his amended bill, making *George Fitzhugh, the elder,* and *Walter,* and *Rebecca Dulany,* parties defendant. The bill stated, that the two last named defendants, in their lifetime, resided out of the State of *Maryland,* and it was not known whether they were alive or dead; and if dead, who were their representatives; and an order of publication was passed against them.

20th February 1834, the *President and Directors of the Bank of Maryland* filed their answer; in which they alleged, that the defendant, *Daniel D. Fitzhugh,* has mortgaged his interest in the premises to them, and aver their ignorance of all other matters alleged in the bill, and leave the complainant to his proof, &c.

1st April 1834, the bill was taken, *pro confesso,* as against the defendants, *George Fitzhugh* and *Mary Fitzhugh;* and an interlocutory decree, under the act of 1820, was passed against *George Fitzhugh, the elder.*

A general replication was entered to the answers, and a commission in chief, and a commission *ex parte,* were then issued, and the complainant proved :—

Exhibit A. Marked, also, LG, No. 4; being the deed from *George Fitzhugh* to *Walter Dulany.*

Exhibit B. Marked, also, LG, No. 3; being the deed from *Mary Fitzhugh, George Fitzhugh, Jr.,* and *Daniel D. Fitzhugh,* to *Rebecca* and *Walter Dulany,* with the assignment thereon, as before stated.

Exhibit C.    The bond from *Mary Fitzhugh* and others, to *Lewis Neth.*

Exhibit D.    The agreement between the same parties.

19th October 1834, the bill was taken, *pro confesso*, against *Walter* and *Rebecca Dulany.*

12th November 1835, the cause was referred to the auditor, with directions to state an account of the balance due the complainant, subject to all exceptions.

The defendants offered proof before the auditor, of two payments made to *Thomas Buchanan*, on the 24th September 1807, and 23d April 1808; and also, that the bond and agreement were executed by *George Fitzhugh, the elder*, and not by *George Fitzhugh, Jr.*

14th December 1835, the auditor reported, that in accordance with instructions of the solicitor for the defendants, he had stated the claim of the complainant in four different aspects, as exhibited in his accounts, Nos. 1, 2, 3, 4; that he had stated the same claim according to the instructions of the complainant, in account No. 5; and that he had also stated an account No. 6, showing the amount due to the complainant, according to the view of the case taken by the auditor.

He further reports, that in an account, No. 6, the auditor has rejected the payments made to *Thomas Buchanan*, (as proved before the auditor,) because the said payments profess to be made on account of a mortgage from *George Fitzhugh* to *Mrs. Dulany*, and which had been assigned to said *Buchanan;* and not on account of the mortgage, in the proceedings mentioned, which is from *George Fitzhugh* and others, to *Rebecca Dulany* and *Walter Dulany*, assigned to *Thomas Buchanan.* Although there is much to lead to the conclusion, that these mortgages are one and the same, yet when it is considered, that this evidence is merely proof of the handwriting, and is offered at this late date in order to correct, as is alleged, an error, committed more than twelve years ago, in a settlement which has been solemnly sanctioned by two deeds of the parties, and by their frequent payments of interest on the balance due by them, as ascertained at that settlement, it appears insufficient to prove such error.

In this account, No. 6, the auditor has rejected the bond and deed of the parties, wherein even a larger amount than the aggregate of the principal and interest of the mortgage debt, due at the execution of said bond and deed, seem to have been united, and the whole attempted to be secured as a principal sum by the original mortgage. This attempt to secure by the original mortgage, more than the principal therein mentioned, with legal interest thereon, the auditor submits, is contrary to the terms of the said mortgage, and illegal; and the complainant is entitled to claim, as a lien on this estate, only the principal mentioned in the mortgage, with the interest thereon; and the rights of the complainant under the bond, it is also submitted, are not impaired by this opinion.

In account No. 1, the defendants are charged with the principal debts secured by the mortgages of 1791, and 1805, and with simple interest thereon; and are credited with the payments to *Thomas Buchanan,* in 1807 and 1808, as proved before the auditor. The balance due by this account, is $3080.69.

In account No. 2, the defendants are charged with the principal debts, as before stated, and with simple interest thereon, from dates in the year 1807, which are arbitrarily assumed. The balance due by this account, is $1893.29.

In account No. 3, the defendants are charged with the principal debts, as before stated, and with simple interest thereon, to 22nd April 1822: credits are given for the payments made to *Mr. Buchanan.* The balance is then converted into principal, and interest charged thereon to the present time. The balance due by this acount, is $5218.54.

In account No. 4, the defendants are charged with interest, from arbitrary dates in 1807, to a day in 1823. The payments to *Thomas Buchanan,* are credited; the balance is then converted into principal, and the account continued down; the balance due is thus made to be $1864.36.

In account No. 5, the defendants are charged with the amount of their bond given to *Lewis Neth,* on the 22nd April 1822, and with interest thereon in the usual manner. The balance due by this account, is $8162.22.

Account No. 6, differs from account No 1, in this particular alone, that it excludes the credits for payments to *Mr. Buchanan*. The balance made due by this account, is $3402.46.

In all the accounts, the defendants are credited with certain payments on the bond, which are admitted to have been made by *George Fitzhugh, Jr.*, subsequent, of course, to the year 1822.

7th January 1836, the complainant excepted to the auditor's report, and his accounts, Nos. 1, 2, 3, 4 and 6.

1. Because said accounts, Nos. 1, 2, 3 and 4, in so far as they differ from his account, No. 5, are not supported by any proof whatever; and on the contrary, are directly opposed by the evidence in the cause. The said statements assume arbitrary periods for the commencement of the account; and the proof being, that a settlement was had on the 22nd April 1822, and a balance was then struck, and acknowledged to be due by the parties, under their seals;—*first*, by their bond, dated 22nd April 1822;—*secondly*, by their agreement or admission, under seal, dated 26th January 1825.

2. Because the auditor, in his account No. 6, has entirely disregarded the aforesaid settlement and admissions, under seal, and by his report has charged the parties with an attempt to secure, by said instruments, a greater sum than is really due, and has declared such attempt to be illegal. Whereas, there is no evidence, whatever, in the cause, tending in any manner to draw into question, the fairness and lawfulness of the aforesaid settlement; and in opposition to the aforesaid views of the auditor, this exceptant insists :—1st. That the aforesaid settlements being wholly unimpeached, furnish conclusive evidence of the extent of this exceptant's claim, as stated in account No. 5. 2nd. That the decree, *pro confesso*, against *Geoge Fitzhugh, Jr.*, and *Mary Fitzhugh, estop* the said parties from denying the correctness of the settlements aforesaid; and no evidence, whatever, has been furnished by *Daniel D. Fitzhugh*, in support of his averment, that more was allowed to be due by said settlement, than in fact was due.

3. That the fact, that the principal debts, with simple interest thereon, from the dates mentioned in the mortgage, to the

day of the settlement, (22nd April 1822,) do not equal the sum which is admitted to be due by the aforesaid bond and agreement, is by no means conclusive to shew, that the party has attempted to secure to himself, the payment of a larger sum than is legally secured by the deed of mortgage.    It was perfectly competent for the parties at any intermediate time or times, to add the interest to the principal, and to allow interest on the compounded sum.    And it will be evident, by calculation, that in fact the interest was compounded at the date of the assignment, by *Mrs. Dulany* to *Mr. Buchanan,* (11th December 1806,) and again, at the date of the assignment by *Mr. Buchanan* to *Mr. Neth,* (2d March 1812.)

From the report of the case in 9 *G. & J.*, 51, it appears that the appellants insisted, there was no evidence of the authority of *William Cooke,* as attorney for *Rebecca Dulany,* to assign her claims to *Thomas Buchanan.*    But assuming the existence of such authority, it is conceded by their succeeding points, that the appellee was to be treated as assignee of the two debts, of £230 and £400; and it is then attempted to be shewn, that the interest of *George Fitzhugh, the elder,* in the premises decreed to be sold, never was charged or chargeable with the debt of £400; that the bond and agreement to compound the interest, and make it a charge upon the whole property, could only bind the parties thereto, and could not bind others, whose debts are secured by the same mortgage, or a subsequent mortagee.

The court decided, that there was sufficient evidence of the legal assignment of *Rebecca Dulany's* claims, to the person under whom the appellee derived his title; and that by force of the bond and agreement, stated, the interest of *George Fitzhugh, the elder,* in the premises decreed to be sold, was well charged with the payment of both debts, and the arrear of the interest thereon.    But because of various defects in the proceedings, the court waived the consideration of the question, how far the agreement to compound interest on those debts could bind others than the parties thereto, and remanded the cause to the Court of chancery, "for the purpose of amending the pleadings, making *Upton Scott,* if living, or if dead, his

legal representative or representatives, a party or parties defendant; and that such further testimony be taken therein, and other proceedings had under the Chancellor's direction, as shall be necessary for determining the cause upon its merits."

Pending the appeal, *George Fitzhugh, the elder,* died. The appellee likewise died, and thereupon, administration *de bonis non,* on the estate of *Lewis Neth,* was granted unto *William S. McPherson,* who,

On the 12th March 1839, the complainant filed his amended and supplemental bill of complaint, and of revivor, against *George Fitzhugh, Jr., Mary Fitzhugh, Daniel D. Fitzhugh,* the *Bank of Maryland, Thomas G. Waters,* and *Walter* and *Rebecca Dulany.* As new matter, it is charged, that the descendable interest of *George Fitzhugh, the elder,* in the premises aforesaid, had vested in the defendants, *George Fitzhugh, Jr., Mary* and *Daniel D. Fitzhugh,* his only children and heirs at law; and it is insisted, that his interest in the premises, thus descended, is bound by the mortgage made by the younger *George, Mary* and *Daniel,* as effectually as if the same had vested in or descended to them, prior to said conveyance.

That the bond and agreement, aforesaid, were executed by *George, the elder,* and therefore, that his interest in said premises, descended as aforesaid, is bound by his execution of said instruments. And that said instruments were executed with the knowledge and consent of *George, the younger,* and with the intent to charge his interests in the premises aforesaid, as well as the interests of the other parties therein, with the payment of principal and interest of the aforesaid claims, as compounded as aforesaid; and amongst other proofs of this fact, it is charged, that the payments made on said bond, were all made by the said *George, junior,* with the intent and design of having the same applied to the payment of interest, on the said consolidated debt.

That *Upton Scott* departed this life upwards of twenty years ago.

That the claim of the *Bank of Maryland,* before stated, "has been entirely satisfied, and that in truth there is no other charge against said premises, remaining unsatisfied."

53    v.3

*Daniel D. Fitzhugh,* in his answer states, that the settle-ment made on the 22d April 1822, of which the bond, exhibit C, was the result, was made by and between *George Fitz-hugh, the elder,* and *Lewis Neth, the younger,* the son and agent of the complainant's intestate. That the respondent says he believes, the defendants, *Mary* and *George, the younger,* had no knowledge of the details of the settlement, nor of its correctness or propriety. That the respondent did, at the time, object to signing said bond, but was finally induced to do so at the earnest request and solicitation of his father, who represent-ed that the mortgage would otherwise be immediately fore-closed, and the estate probably sacrificed. That the said bond, was in fact, executed by *George, the elder,* and not by *George,* the son. That some time before the execution of said bond, at the request of his father, (who had then reached an advanc-ed age,) this defendant assumed the control and management of the farm, and that every payment thereafter made to the said *Lewis Neth,* was in fact, made by the respondent from the proceeds of the farm, and that no payment was ever made by *George, the younger,* except as agent of respondent. That before the execution of said bond, he never did agree with said *Neth* to compound the interest on said mortgage debt, and he has no knowledge whether the sum mentioned in said bond, was made and arrived at by compounding the interest on the said mortgage debt, or how otherwise, the said sum was arrived at. He utterly denies that he ever did agree with the said *Neth* to compound interest on the said debt, unless such agreement be contained in said bond or in the instrument of writing marked D, and avers his belief, that the sum in said bond mentioned, could not be made by compounding interest on said mortgage debt, from the date of the assignment thereof to said *Neth,* up to the date of the execution of said bond. He further states, that whilst the said mortgage debt was held by *Thomas Buchanan,* the annual interest thereon claimed was $107.79, or thereabouts, and that said interest was fully paid to said *Buchanan,* up to the 31st March 1810. That the agreement, exhibit D, was executed by him at the request and solicitation of his father, in like manner as

exhibit C had been previously executed, and without any examination by him into the correctness of the debt, therein said to be due, and that said exhibit was executed by *George, the elder,* and not by *George,* the son; and he concludes by averring, that the said exhibits were made and delivered for the purpose of securing the payment of money upon a usurious and unlawful contract, whereby there was assured to said *Neth,* for the forbearance of said money, above the rate of $6, for the forbearance of $100 a year.

*Mary Fitzhugh,* by her answer, admits the execution of the deeds, marked A & B. She admits, also, that she has understood from her father, that the *said debts, in said deed* mentioned as due to the said *Rebecca Dulany,* were assigned to *Thomas Buchanan,* and that the *same debts* were afterwards by him assigned to said *Neth;* but she has no knowledge of said assignments, nor whether the said mortgage deeds, or either of them, were assigned to said *Buchanan* or *Neth.* That she is informed, and believes, considerable sums were at different times paid by her said father, and *Daniel D. Fitzhugh,* on account of said *debts,* but the amount of said payments she does not certainly know. She admits, that on or about 22nd April 1822, a settlement was made by and between her said father and *Lewis Neth, the younger,* in which she took no part, and of the details of which, she had no knowledge; but after said settlement, she was called upon by her father to execute, and together with her father, and *Daniel,* her brother, did execute the bond, exhibit C, and that afterwards, at the request of her father, she did, together with him and *Daniel,* execute the instrument of writing, exhibit D. That she has no knowledge, how the sum of money mentioned in the exhibits C & D, were made, or arrived at, but expressly avers, that she was not asked, and never did agree, to compound the interest on said mortgage debt, unless the mere execution of the exhibits C & D, under the circumstances above mentioned, amount to such agreement. She avers her belief, that the sum in those exhibits mentioned, could not have been made or arrived at, by compounding the interest in said mortgage debt; and further insists, that those exhibits

were executed and delivered at the request of said *Neth,* and by his procurement, for the purpose of securing the payment of money in a usurious and unlawful contract, &c.

This bill was taken *pro confesso,* as against *George Fitzhugh, Jr.,* and it will appear, that the family of *Worthingtons,* the children of a deceased daughter of *George Fitzhugh, the elder,* and who as such, were heirs at law, have virtually disclaimed. An amended bill was filed, for the purpose of making them parties, which they answered, and sufficient evidence to change them, will be found in the agreement, and the testimony. As against them, therefore, and *George Fitzhugh, Jr.,* the case, it is presumed, is clearly made out.

There was a decree, *pro confesso,* against the *Dulany's.*

In relation to the claim of *Upton Scott,* the answer of *Thomas G. Waters,* as *administrator de bonis non* of *Upton Scott,* disclaiming all interest in the writ.

The amended bill charges, that *Scott,* in his lifetime, assigned the claim to *Henry Maynadier,* in trust, to apply the same, when secured, to the use and benefit of *Margaret Maynadier,* and delivered said assignment, endorsed on the claim itself, unto the said *Margaret,* who kept the same, until her intermarriage with the defendant, *Daniel D. Fitzhugh,* upon which event it came into his possession. And that the rents and profits of the trust estate received by the said *Daniel,* have been more than sufficient to satisfy the claim.

The answer of *Maynadier,* is a virtual disclaimer of all interest in the writ. And as against *Daniel D. Fitzhugh,* and *Margaret,* his wife, the bill was taken *pro confesso.*

Upon the death of *Daniel D. Fitzhugh,* a bill of revivor was filed against his children's administrator. In this bill it is charged, that the said *Margaret* died in the lifetime of her said husband, and that no administration has been taken out in her estate, the said claim having been satisfied to her said husband in his lifetime.

The answers of those children, and administrator, do not vary the state of the case.

There is a release from the *Bank of Maryland,* to *Daniel D. Fitzhugh,* which entirely destroys its interest in the suit.

The following agreement signed by counsel, for all the parties, was filed in the cause :—

It is agreed and admitted, that the paper filed with the original bill, on April 6th, 1833, marked exhibit A, and also LG, No. 4, is a correct copy of the mortgage given by *George Fitzhugh, Sr.* to *Walter Dulany,* as stated in said bill; that the paper filed as above, marked exhibit B, and also LG, No. 3, is a correct copy of the mortgage from *Mary Fitzhugh, George Fitzhugh, Jr.,* and *Daniel D. Fitzhugh,* given as stated in the proceedings.

That the paper marked LN, and purporting to be a bond from *George, Mary,* and *Daniel D. Fitzhugh,* to *Lewis Neth,* and the other paper, marked D, and also LG, No. 2, and purporting to be an agreement between the same parties, were signed, sealed and delivered by the defendant, *Mary Fitzhugh,* and by *George Fitzhugh, Sr.,* and *Daniel D. Fitzhugh,* both of whom are since deceased, as stated in the proceedings. That the endorsements of credits on the said bond LN, are correct as to the facts stated therein, but that the said payments and deposits by them referred to, and acknowledged as made by *George Fitzhugh, Jr.,* were made by him in the bank referred to, as agent of *Daniel D. Fitzhugh,* and not on his own account; said *Neth* being aware of their being so made, and of said agency also. That the assignments endorsed on said paper LG, No. 1, purporting to be a copy of the mortgage from the said *Mary Fitzhugh, George Fitzhugh, Jr.,* and *Daniel D. Fitzhugh,* to *Rebecca Dulany,* and *Walter Dulany,* were made in manner and form as they appear, and the proofs already in the cause relating to said assignments, are likewise admitted.

It is further admitted, that the debt formerly due to the *President and Directors of the Bank of Maryland,* has been satisfied. That after the death of *Lewis Neth,* aforesaid, administration on his estate was duly granted unto *Lewis Neth, Jr.,* deceased, and upon his death, administration *de bonis non* was duly granted on said estate to the original complainant, *Samuel Maynard,* and upon his death, administration *de bonis non* was duly granted unto the present complainant.

That the papers endorsed, TB, No. 1, TB, No. 2, purporting to have been signed by *Thomas Buchanan*, under whose assignment complainant now claims, were in fact signed by said *Buchanan*, and are to be taken as evidence of payments to the amounts therein specified and acknowledged, made on account of the aforesaid mortgage debt as specified in said papers; this admission however, being confined to the facts, all legal questions and inferences arising being expressly reserved.

That the paper marked exhibit US, is the original bond from *George Fitzhugh, Sr.*, to *Upton Scott*, mentioned in and secured by the mortgage from *George Fitzhugh, Sr.*, to *Walter Dulany*, already hereinbefore mentioned, and the due execution of the assignment thereon is likewise admitted. That the defendant, *George Fitzhugh, Sr.*, deceased, occupied the premises, mortgaged as aforesaid, until 1821, in virtue of his legal title thereunto; at which said time, *Daniel D. Fitzhugh* became the purchaser of his said father's interest, and retained the possession thereof until 1836, when his said father died, since which time the said *Mary* and *Daniel*, and after his decease, the heirs of the latter, have enjoyed their respective rights in and to said premises, no legal impediment having at any time existed to exclude said *Mary* from the exercise of any legal or equitable rights, which she may have had.

It is further agreed, that the complainant shall be entitled to the benefit of his several decrees, *pro confesso*, against defendants hereto, and that as to the defendants who have answered, this statement of facts is to be treated as in aid of proofs after a general replication. And nothing in this agreement shall be construed to admit the plaintiff's right to a decree against any property of *George Fitzhugh Jr.*, which he shall not, by the pleadings, proofs, and facts agreed to, show to be embraced within his lien.

The auditor reported sundry accounts, Nos. 7, 8, 9 and 10, in conformity with the instructions of defendants. In all those accounts he charged the defendants with the principal debts of £230, and £400, and with interest thereon on various principles.

To all those accounts the complainant excepted, and insisted, that the account No.5, formerly reported, truly stated the balance due on his claim.

The defendants, *Mary Fitzhugh*, and the children of *Daniel D. Fitzhugh*, excepted to the auditor's report of 1835, and all the accounts filed therewith, except No. 1.

They excepted to the bond of 1822, and agreement of 1825, as usurious and void, because they were given to secure a greater amount than was due for principal and interest at the times of their execution.

And now insist, that they are liable only for the debt of £400, with interest from 4th November, 1793.

The Chancellor, (BLAND,) by his decree, dated 8th March 1843, again ratified account No. 5, and directed a sale of the mortgaged premises.

From this decree the *Fitzhughs* appealed.

The following is a copy of the statement submitted on the former hearing, to confirm the position then taken, that the amount due was adjusted by compounding the principal and interest, due at the time of the respective assignments, and again at the time of settlement.

| | |
|---|---:|
| The principal debts amount to, - - - | $1680 00 |
| Interest on $613.33, from 10th October, 1791, to 11th December 1806, date of the first assignment—15y. 2m. 1d. - - - - - - | 558 23 |
| Interest on $1066.67, from 4th November, 1793, to ditto—13y. 1m. 7d. - - - - - | 838 58 |
| | $3076 81 |
| Interest on the whole to 24th September, 1807— 9m. 13d. - - - - - - - - | 145 12 |
| | $3221 93 |
| Payment, - - - - | - 215 62 |
| | $3006 31 |
| Interest on balance to 23d April, 1808—6m.29d. | 104 72 |
| Carried forward, - - | $3111 03 |

|                                                                 |         |    |
| --------------------------------------------------------------- | ------- | -- |
| Brought forward,   -   -                              | $3111   | 03 |
| Payment,   -   -   -   -   -           | 107     | 79 |
|                                                                 | $3003   | 24 |
| Interest on balance to 2d March, 1812, date of second assignment—2y. 10m. 9d.   -   - | 695 | 25 |
|                                                                 | $3698   | 49 |
| Interest on the whole to 22d April, 1822, the date of settlement—10y. 1m. 20d.   -   -   - | 2249 | 91 |
|                                                                 | $5948   | 40 |

The bond is given for $5915.

The cause was argued before DORSEY, SPENCE and MARTIN, J.

By WALLIS, DULANY, and McMAHON, for the appellants, who contended:—

The decree in this case, was rendered for the amount of the mortgage debt, as ascertained by the auditor's statement No. 5, which was adopted and ratified. This statement assumes, that *Neth* was the assignee of both of the debts of *George Fitzhugh* to *Rebecca Dulany*, as described in the mortgage deed of 27th April 1805, and that the amount of those was conclusively ascertained by the bond executed on the 22nd April 1822.

And the appellants, in opposition to this decree, and contending for its reversal, will insist:

1st. That the evidence does not establish, that *Neth* was assignee of more than the £400 debt mentioned in said mortgage.

2nd. That even if *Neth* is admitted to have been assignee of both debts, could not by any computation of them, with simple interest, up to the date of said bond of 22nd April 1822, have amounted to the sum mentioned in said bond; and that the said sum could only have been made out as the amount of the debts then due, by charging illegal and usurious interest.

3rd. That the said calculation in 1822, of the amount due, could not be sustained even by compounding, at the periods of the assignment to *Buchanan* and *Neth*, as also at the date of said bond, (April, 1822;) and that, even if it could, there is no evidence of any agreement on the part of the appellees, or any of them, to compound at the period of the assignment by *Mrs. Dulany* to *Buchanan*, or of the assignment by *Buchanan* to *Neth*, nor any right in said assignees respectively, to have the debt compounded at the period of said assignments, or of either of them.

4th. That there was no agreement to compound, at the period when the said bond of 22nd April 1822, was executed on the part of the appellees, or any of them, and if there were, it could only be binding as an agreement to convert the interest into principal, at that date, so as to make the compounding operate prospectively; and that any agreement at that period to compound retrospectively, as between the mortgagor and mortgagees, is illegal and usurious, and so oppressive to the mortgagees, that equity will relieve them from it.

5th. That the amount of the debt, as ascertained by said bond of April 1822, could only have been made out by the exaction of illegal and usurious interest, or by such compounding of the debt as the law regards as oppressive, as between mortgagor and mortgagee, and the appellees are entitled to be relieved against it, at least to the full extent of the usury or exaction, and to have the mortgage debt ascertained, either by computing them with simple interest down to the present period, or if there be proof of any agreement, then by computing them with simple interest down to the period of such agreement, if any, and with simple interest from that period forward on the compounded sum.

6th. That as to the appellee, *George Fitzhugh, Jr.*, the evidence shows, that there never was any agreement on his part to compound, nor any pretence of right to compound; and that, notwithstanding the order for decree, *pro confesso*, against him, the decree, as to him at least, was erroneous and must therefore be reversed, either generally, or as to him.

54      v.3

7th. That as to said appellee, *George Fitzhugh, Jr.*, the said decree if erroneous and reversed as to the other defendants, must also be reversed as to him.

By T. S. ALEXANDER and R. JOHNSON for the appellee, who insisted in support of the decree :—

1. That the title of his intestate, *Neth*, as assignee of the entire interest of *Rebecca Dulany*, under the deeds of 1791 and 1805, is established by the order of this court, passed on the former appeal, and independently of that order, is clearly made out by the pleadings and proofs in the cause.

2. That the validity of the settlement of 1822, of the bond of 1822, and agreement of 1825, are established by the aforesaid order of this court, as against the parties to those transactions, and those, who at the time, or afterwards, consented thereto. And such participation and consent is clearly made out by the pleadings and proofs against all the appellants.

3. That under all the circumstances, the claim of *Upton Scott* ought to be treated as satisfied.

MARTIN, J. delivered the opinion of this court.

This case comes before us on an appeal from the Chancery court, and presents for our consideration the correctness of the decree of the Chancellor, of the 8th March 1843, adopting and ratifying the auditor's statement, No. 5.

The amount reported to be due to the complainant, by the auditor in this account, was ascertained, by treating *Lewis Neth* as the assignee of both of the debts embraced by the mortgage, of the 27th April 1805; and by compounding the principal and interest due on those debts, at the period of the assignment, from *Rebecca Dulany* to *Judge Buchanan*, and, again, at the time of their assignment from *Buchanan* to *Neth*.

These being the principles by which the auditor was regulated in the adjustment of the account, two questions are presented for the consideration of this court.

*First*. Whether *Lewis Neth* is to be regarded as the assignee of both of the debts described in the mortgaged deed, already adverted to ? and

*Secondly.* If the auditor was correct in compounding the principal and interest, at the periods of the assignment from *Mrs. Dulany* to *Mr. Buchanan*, and from *Buchanan* to *Neth?*

Although many propositions were discussed in the course of the argument, the accuracy of the auditor's report, and the correctness of the Chancellor's decree, turn on the questions, as above stated.

When this case was before the court, in 1837, 9 *G. & J.*, 56, the counsel for the appellants raised the following points, in reference to the assignment of these debts:

"That there was no evidence, that *William Cooke*, who signed the assignment to *Thomas Buchanan*, as the attorney for *Rebecca Dulany*, was the attorney of *Rebecca Dulany*;" and "that the decree is for the sale of all the lands mentioned in the proceedings, for the payment of the two debts, of £230, and £400, added together, and interest compounded thereon, when complainants, exhibits *A* and *B*, shew, that the life estate of *George Fitzhugh, Sen.*, in five hundred acres, and his fee-simple estate in one hundred and eighty-eight acres, never were charged or chargeable with the debt of £400." Upon this subject, the court declare:

"Such an objection, comes with an ill grace from the defendants, under the circumstances of this case. The assignment was made in 1806. It has been acquiesced in, and recognized by the appellants, from that time, until the filing of their notes in this court, a period of more than thirty years. They have for about twenty-five years, continued, from time to time, to pay to the said assignee, and those claiming under him, interest due on the *debts* assigned. *Daniel D. Fitzhugh*, one of the appellants, in his answer, in express terms, admits the assignment of the *debts* due to the said *Rebecca Dulany*, to *Thomas Buchanan;* and three, of the four appellants, by a bond and agreement, under their hands and seals, the first dated in 1822, the second in 1825, by necessary implication, and also in the said agreement, in express terms, admit the assignment and its validity, and in like manner make the same admission in 1835, in their instructions to the auditor to state the accounts."

It is seen, then, that the objection raised by the counsel for the appellants, on this question, presupposed, that *Neth* was the assignee of both the debts; and that such was the extent and character of the assignment, was held by the court as an unquestionable proposition. It is manifest, indeed, that *Rebecca Dulany* became, by force of the mortgage deed of the 27th April 1805, the holder of the two debts; and it is equally clear, we think, that the entire interest of *Mrs. Dulany,* passed to *Judge Buchanan,* by the assignment of the 11th December 1806; and that all the interest of *Buchanan,* was communicated to *Neth,* by the assignment of the 2nd March 1812.

The next question presented for our consideration, is that which respects the computation of interest, by converting it into principal, at the dates of the assignments, already referred to.

The right of the appellee's intestate to the interest, as compounded by the auditor, stands on the settlement of the 22nd April 1822, the bond of 1822, and the agreement of the 26th January 1825.

It is perfectly clear, as a legal proposition, that the holder of the mortgaged debt, was entitled to compound interest, on the principles adopted by the auditor, as against those parties who executed or assented to the papers, to which we have just adverted.

*Coote,* in his work on mortgages, 438, says:

"When interest has once accrued, it becomes a debt. There is no longer, therefore, any objection to an agreement *inter partes,* that it shall be considered principal, and, therefore, carry interest. Indeed, it would be injurious to the mortgagor to establish the contrary, as it would remove an inducement to the mortgagee's permitting his principal to remain, and, consequently, equity has recognised such agreements; but there must be no extortion on the part of the mortgagee, or, otherwise equity will interpose to the relief of the mortgagor." The same proposition is maintained in *Brown vs. Barkham,* 1 *P. W.,* 654. *Mowry vs. Bishop, 5 Paig.,* 98. 1 *Johns. Ch. Rep.,* 13. 3 *Ohio R.,* 17.

But, the doctrine announced by the Court of Appeals, on this question, renders the production of authorities unnecessary. They say :

"The 9th ground which is relied on by the appellants, for reversing the decree, is thus stated, because the mortgagors cannot, by any agreement, compound the interest on the principal debt, and render the whole a charge upon the lands, to the prejudice of those whose debts are secured by the same mortgage, and of the *Bank of Maryland*, a subsequent mortgagee. The first branch of this proposition has not been, and cannot be contended for; if by debts, secured by the same mortgage, is meant debts which are subsisting liens upon the mortgaged premises, and are obnoxious on the part of the plaintiff, if otherwise conflicting with his claim, to no other bar to their recovery, than that arising from the compounding of interest." And again they say :

"The point raised by the appellant's seventh ground, under the insufficient proofs in the cause, cannot be resisted. To bind the interest of *George Fitzhugh, Jr.*, in the mortgaged premises, for the interest compounded at the dates of the assignments of the mortgage debts to *Buchanan* and *Neth*, his concurrence in the making of such assignments, must be proved, or his subsequent ratification of, or assent to such compounding, must be shewn."

An examination of the record will show, that the defendants, *Mary* and *Daniel D. Fitzhugh*, admit by their answers, the execution of the instruments of 1822 and 1825, and as the defensive averments advanced by those defendants, for the purpose of extricating themselves from the operation of those papers, are not responsive to the bill, and are entirely unsupported by proof, they must be disregarded.

The position occupied by *George Fitzhugh, Jr.*, is different from that held by his co-defendants. The decree was taken against him *pro confesso*, and this being so, it is an established principle, that the allegations of the bill are to be received as true, so far as he is concerned. 10 *G. &. J.*, 65. 1 *Hop. R.*, 476.

As the bill charges, that *Lewis Neth* was the assignee of both of the debts in controversy, and that the agreement and bond of 1822 and 1825, were executed with the knowledge and consent of *George Fitzhugh, Jr.*, those facts must be considered as proved against him.

A point was raised by the counsel for the appellants, preliminary in its character : "That there is no averment in either of the complainant's bills, of an agreement or agreements, to compound between the complainant, or those whom he represents, and the defendants, or those whom they represent, and that, therefore, all evidence tending to show a compounding in point of fact, was inadmissible; the want of the proper averment in the bill having been excepted to."

The bill charges, that the complainant's intestate was entitled to the mortgage debt, *with interest thereon;* and it was contended by the counsel for the appellants, that this averment did not authorise the introduction of the testimony, on which the appellee relies, as authorising his claim to compound interest.

To this proposition we cannot consent. Under the averment, to be found in the bill upon this subject, the complainant was entitled to recover his debt, either with simple or compound interest, as might appear to be lawful and just upon all the circumstances of the case.

It follows from the views thus expressed, that we concur in opinion with the Chancellor, and think that his decree must be affirmed.

DECREE AFFIRMED WITH COSTS.