# CHARLESTOWN.

## STANSBURY'S ADM'R v. STANSBURY.

Submitted June 5, 1884—Decided September 27, 1884.

After interest on a debt has become due, an agreement, that compound interest shall be allowed on the various amounts of interest which had *previously* fallen due, in consideration of a forbearance on the part of the creditor to collect the debt, is a usurious contract. But an agreement made, after interest has become due, that this back interest due shall bear interest from the date of the agreement, in consideration that the collection of the debt is forborne, is not usurious and will be permitted, such an agreement not even tending to usury.

GREEN, JUDGE, furnishes the following statement of the case:

The bill in this cause was filed in the circuit court of Brooke county by James F. Watts and George McWha, administrators of Nicholas Stansbury, for the purpose of subjecting the real estate of the decedent to the payment of his debts, his personalty being insufficient. It is unnecessary to state the proceedings in the cause except so far as they relate to the appellant, Rebecca Hindman, who by an amended bill was made a party defendant. She in her answer set up that she was the *bona fide* owner of a negotiable note executed by the testator, Nicholas Stansbury, dated October 22, 1860,

payable six months after date with interest from date for the sum of two thousand and five dollars, on which were endorsed two credits in 1863 amounting to thirty-six dollars and seventy-five cents, also an endorsement made May 22, 1872, that all interest was paid up to that date, and on March 25, 1879, another credit of four dollars and twenty-five cents; and the answer states that there were no other credits than these upon this note. The answer further stated, that in October, 1860, a deed of trust was executed by Nicholas Stansbury on his home-farm to secure this note. She claims, that the balance due on this note is two thousand eight hundred and twenty-three dollars, with interest from March, 1879, and states, that she receivad this note from the administrator of James Hindman as a part of her distributive share of his estate, she being his widow. The commissioner, to whom this matter was referred, reported the claim of Rebecca Hindman just as it was set up in her answer and reported it also to be the first lien on the real estate of Nicholas Stansbury. This report was filed July 20, 1880, and it was excepted to very generally by the plaintiff's counsel, because it did not find the proper amount due to Rebecca Hindman, and because it did not give a proper credit for the amount paid May 22, 1872, that is one thousand eight hundred and fifty-one dollars and six cents. This exception was overruled by the decree of July 26, 1880, and a former report as well as this recommitted report confirmed, and a decree was rendered for the sale of the real estate of Nicholas Stansbury, deceased. Subsequently, on the 11th day of December, 1880, the following decree was rendered:

"This cause came on this day to be further heard upon the papers heretofore read and the decrees heretofore entered, and by consent of the parties it is adjudged, ordered and decreed, that so much of the decree of July 26, 1880, as overrules the exceptions to the commissioner's second report and confirms the same to be set aside, and that the said complainants have leave to restate their said exceptions to said second report, with a view to raising any question that may be raised relating to usury or to alleged illegal compound interest; that such question is to be regarded and treated as if presented by the pleadings in the cause; that the deposi-

tions of Samuel Hindman and J. R. Hindman, filed with the said second report, with the statement of William Brown showing a calculation between the parties, be taken and considered as evidence regularly in the cause, and that the deposition of Samuel Hindman be taken and read as if the conversation by him first detailed occurred at the time of the transaction referred to by the witness, J. R. Hindman, namely, the giving of the note for one thousand eight hundred and fifty-one dollars and six cents; and this cause is submitted to the court for decision as to the claim of Rebecca Hindman reported by Commissioner Marks."

Thereupon proper and formal exceptions were filed by the complainants to the report of July 20, 1880, which found that there was due to Rebecca Hindman the principal of this note, two thousand and five dollars, with interest from May 22, 1872, subject to a credit of only four dollars and twenty-five cents as of March 25, 1879. These exceptions insist that the commissioner erred in not crediting this note of two thousand and five dollars as of May 22, 1872, with one thousand eight hundred and fifty-one dollars and six cents as of that date, instead of crediting on this note only the interest due on it to May 22, 1872. If so credited, it would have reduced this note of two thousand and five dollars, the exceptions claim, to one thousand five hundred and fifty-three dollars and ninety-nine cents; and this should have been reported as the amount due to Rebecca Hindman with interest on one thousand five hundred and fifty-three dollars and ninety-four cents from May 22, 1872, subject to this credit of four dollars and twenty-five cents of March 25, 1879. The difference between this and the amount reported by the commissioner would be, these exceptions state, about nine hundred dollars, this difference being produced, say these exceptions, by the commissioner in effect allowing compound interest on the original debt from its date, October 22, 1860, to May 22, 1872.

The facts appearing from the evidence referred to in the consent-decree of December 11, 1880, are as follows: On the 22d day of May, 1872, by the direction of the parties a calculation was made by William Brown of the amount due on this note of two thousand and five dollars dated October 22, 1860. In this calculation compound interest was allowed,

the interest being compounded annually. This compounding of interest was made with the knowledge and assent of the maker of the note, who had at some previous time, it does not appear when, agreed with Rebecca Hindman that he would pay her compound interest, if she would give him time, which she did; and this mode of calculating interest was adopted as carrying out this agreement. According to this mode of calculating the interest on the entire amount of the debt due on May 22, 1872, was three thousand eight hundred and fifty-six dollars and six cents, or subtracting from it the principal, two thousand and five dollars, it left one thousand eight hundred and fifty-one dollars and six cents, which the parties regarded as interest then due. Thereupon Nicholas Stansbury gave his note therefor to Rebecca Hindman and secured it by a deed of trust on his home-farm. This note of one thousand eight hundred and fifty-one dollars and six cents was afterwards paid in full by Nicholas Stansbury; but he never after May 22, 1872, the date of this settlement, paid anything on the original note of two thousand and five dollars, except four dollars and twenty-five cents on March 25, 1879. At the time of this settlement and the giving of the note for the compound interest the following endorsement was made on the note of two thousand and five dollars. "Paid on the within note all interest up to May 22, 1872." The facts were all perfectly well understood by all parties, when this settlement was made. On March 5, 1881, the circuit court by its decree sustained the complainant's exceptions to the commissioner's report; and in lieu of the amount found due to Rebecca Hindman decided that the true amount was two thousand five hundred and fifty-six dollars and fifty-six cents with interest from March 5, 1881, and that it was a first lien but subject to a credit for any amount paid her under former orders of this court; and it was directed to be first paid out of any assets of the estate.

From this decree Rebecca Hindman has obtained an appeal and *supersedeas* from a judge of this Court.

*R. G. Barr* and *J. Dunbar* for appellant.

*G. W. Caldwell* for appellee.

GREEN, JUDGE:

Whatever diversity of opinion there may have been as to the circumstances under which compound interest or interest upon interest can be collected, there is one thing which must be regarded as definitely settled in Virginia and in this State, viz: That an agreement to pay interest upon interest is valid, if made after the interest, which is to bear interest, has become due. (*Craig* v. *McCulloch et al*, 20 W. Va. 154; *Genin* v. *Ingersoll*, 11 W. Va. 549; *Pendall* v. *Bank of Marietta*, 10 Leigh 481; *Childers* v. *Dean*, 4 Rand. 406; *Fully* v. *Davis*, 26 Gratt. 903–911). This is settled law with us; and, it seems to me, it has been correctly settled. If it were an open question, which it is not, I should reach the same conclusion on reason. When interest has become due, it is a debt which the creditor has a right to collect; and an action had to recover it, even though the debt, on which the interest has accrued, may not then be due. If instead of paying it the debtor wishes to retain this interest and to pay interest on it as any other debt, while it is due, and agrees to do so, I can see no reason why he should not be bound by such agreement—It is nothing more than an agreement to pay interest for the forbearance of the enforcing of the collection of a debt then actually due and demandable. There is much authority which sustains these views. (*Greenleaf* v. *Kellogg*, 2 Mass. 568; *Young* v. *Hill*, 67 N. Y. 162; *Tyler* v. *Yates*, 3 Barb. 222; *Fitzhugh* v. *McPherson*, 3 Gill 408).

On these authorities it is clear that Rebecca Hindman could on May 22, 1872, when she settled with Nicholas Stansbury, have legally calculated the interest due upon the note of two thousand and five dollars, which she held to that date and could have taken from him a new note for this interest, which after allowing previous payments would have been about one thousand three hundred and fifty-six dollars, and seventy-three cents, and could have secured this interest represented by this note of one thousand three hundred and fifty-six dollars and seventy-three cents by a deed of trust, and could have enforced payment of the same. This it is true would have been the equivalent of compounding the interest due on the original debt on May 22, 1872; and this according to the Virginia and West Virginia cases would have been entirely legitimate,

as the contract to compound the interest due on May 22, 1872, was not made till this interest became due and payable. But the contract made on May 22, 1872, was materially different from this, inasmuch as it was a contract to pay a sum with the interest thereon from that time, not for a debt then due with the interest which the creditor had a right to enforce then, but for a sum four hundred and ninety-four dollars and thirty-three cents more than the debts then due, that is, the interest then due on the original debt. This excess of four hundred and ninety-four dollars and thirty-three cents was found by calculating the interest on the original debt compounding it annually from the time the original debt was contracted. But the creditor, when this contract was made (May 22, 1872), had no right to recover on the original debt compound interest but only the debt and the simple interest which had not been previously paid. For the giving of this note on May 22, 1872, for four hundred and ninety-four dollars and thirty-three cents more than the simple interest then due and unpaid there was no consideration whatever except the forbearance of the creditor to enforce his debt then due; and as his whole debt was still to bear interest, this four hundred and ninety-four dollars and thirty-three cents can only be regarded as a premium over six per cent given by the debtor for this forbearance, which made the transaction, it seems to me, obviously usurious. This conclusion is in accord with the Virginia and West Virginia cases and seems to me to be a necessary conclusion from the principles laid down in these cases. It is true that there are decisions in other courts in conflict with this conclusion; but it seems to me that they cannot be followed without infringing on the statute against usury. (See *Wilcox* v. *Howland*, 23 Pick. 167; and perhaps *Kellogg* v. *Hickop*, 1 Wend. 521, may conflict with my views). *Miles* v. *Commissioners*, 8 Blatchf. 158, is also relied on by appellant's counsel, but it does not seem to me to be in conflict with the conclusion I have reached.

It is true this four hundred and ninety-four dollars and thirty-three cents was not then paid, and we do not know when it was paid, but we do know, that when it was paid, it was paid with interest from May 22, 1872, as the note taken at that time for one thousand eight hundred and fifty-one dol-

lars and six cents bore interest from that time, and this four hundred and ninety-four dollars and thirty-three cents constituted a part of it, and was paid off with interest from May 22, 1872, when this note for one thousand eight hundred and fifty-one dollars and six cents with interest was paid. Exact justice would therefore be done by crediting this four hundred and ninety-four dollars and thirty-three cents as paid on May 22, 1872, as well as all the interest on the original debt of two thousand and five dollars to that date. This would reduce the principal of the debt on May 22, 1872, to one thousand five hundred and ten dollars and sixty-seven cents. The interest on this to March 5, 1881, when the decree appealed from was rendered, would be seven hundred and ninety-six dollars and thirty-seven cents making the debt and interest to March 5, 1881, two thousand three hundred and seven dollars and four cents, less the four dollars and twenty-five cents paid March 25, 1879, or two thousand three hundred and two dollars and seventy-nine cents. While the circuit court in the decree of March 5, 1881, appealed from, appears to have adopted the views above expressed by sustaining the exceptions of Rebecca Hindman to the commissioner's report, yet in calculating the amount due to her on this mode of calculation, some error appears to have been committed, as this decree fixes the amount due to her at two thousand five hundred and fifty-six dollars and fifty-six cents, as of that date, which according to my calculation is an error in her favor of two hundred and fifty-three dollars and seventy-seven cents. How such a mistake has occurred it is difficult to tell.

But it is claimed, that Nicholas Stansbury voluntarily paid this compound interest, and that he cannot in effect recover what he has thus voluntarily paid; for though the courts do not in general allow compound interest, yet they do not refuse to allow it, because it is illegal. To sustain this position counsel refer to *Dow et al.* v. *Drew*, 3 N. H. 40. This case does sustain this position. But I deem it unnecessary to consider whether the law is correctly laid down in this case or not. For admitting this to be the law as claimed by the appellant's counsel, it seems to me to be entirely inapplicable to the case before us. The debtor here did not vol-

untarily pay this four hundred and ninety-three dollars and twenty-three cents the difference between the simple and compound interest; for when he paid it, the creditor not only had his obligation for it, but also had a deed of trust on his home-farm to secure its payment.   It is true, he voluntarily gave his obligation including this four hundred and ninety-three dollars and twenty-three cents, and he voluntarily gave the deed of trust to secure it; but when he gave it, he did so to secure the forbearance of the creditor in enforcing her debt; and though he may have declared, that he regarded it right to pay this compound interest, and willingly gave this note and deed of trust to secure the same, yet, as the taking of this note for an amount in excess of what was due designedly by the creditor rendered the transaction usurious, the willingness of the debtor to give this usurious note and secure it by a deed of trust would not purge the transaction of the usury.   His subsequent payment of this note so given was voluntary only in the sense, in which every payment of a usurious debt is voluntary; and all admit that usurious interest when paid may be recovered back.

It is also claimed by counsel for the appellant, that it is not illegal to stipulate for compound interest, or that interest, as it becomes due, shall be converted into principal and carry interest; and some authorities are cited for this position.   I apprehend, that this position is not well taken, and that the weight of reason and authority is opposed to it including the Virginia and West Virginia cases; but I do not deem it at all necessary to consider this question, for there is not a pretence, that, when this debt was contracted, there was any stipulation that it should bear compound interest.   The note given for the debt originally simply called for interest from its date; and the interest was not to be paid annually.   It was a simple note payable in six months for two thousand five hundred and five dollars with interest from the date of the note.   There was, when this original note was given, no special contract of any kind with reference to the interest; and in fact no special contract of any kind with reference to the interest was made according to the evidence, as I understand it, till May 22, 1872, when the debtor under a contract not with his original creditor but with an assignee of the

original note, Rebecca Hindman, stipulated, not to pay compound interest in the future, but to pay compound interest for the time which had then elapsed since the original note was given. This contract, we have seen, was usurious and, as I understand it, was the only special contract with reference to the interest. It is true Samuel Hindman does depose that "there was an agreement, by which he (Nicholas Stansbury) was to pay interest on interest, if she (Rebecca Hindman) would wait upon him for the principal, and they both carried out that agreement." In saying they carried out that agreement the witness evidently refers to the transactions of May 22, 1872, of which he was speaking. These transactions were, we have seen, usurious. The agreement of which he speaks, I understand, was a mere preliminary and verbal agreement made just prior to May 22, 1872, and which was on that day carried out, and was therefore a usurious agreement. I conclude, that this was the meaning of the witness, because he gives no other date to this agreement, and because it was carried out on May 22, 1872, and was with Rebecca Hindman, the assignee. She did not own this debt, till many years after the original note was given to her husband; and most probably she became the owner of it but a short time prior to May 22, 1872. In her answer she says, that this original note was transferred to her prior to 1872 as and for a part of her distributive share of the estate of her husband, to whom the original note was payable. My conclusion therefore is, that the only agreement ever made by Nicholas Stansbury with reference to this debt was the one he made with Rebecca Hindman, the assignee of this note, and that this agreement was to pay compound interest on the debt not in the future but for the time, which had elapsed, when this agreement was made; and this verbal agreement was a mere preliminary one, which was reduced to writing and carried out on May 22, 1872, which agreement was, as we have seen, usurious.

The decree of the circuit court of March 5, 1881, in so far as there is an error in the calculation of the amount due, which I have pointed out, must be corrected, and then this decree must be affirmed, and the appellees must recover of the appellant their costs in this Court expended and $30 damages.

CORRECTED AND AFFIRMED.