Townsend *v.* Corning.

Same Term.    *Before the same Justice.*

Townsend and others *vs.* Corning.

It is not usurious for a vendor to require the assignee of a contract for the purchase of land, to pay the costs of a suit instituted by the vendor against the assignor upon a note given for back interest, as a condition of discontinuing an ejectment suit, brought against the assignee, for the recovery of the land, and of giving time for the payment of the principal sum due.    ·

The assignee of a contract for the purchase of land, takes the land subject to all the equities and liabilities resting upon the assignor at the time of the assignment. He is therefore equitably bound to pay the costs of a suit brought by the vendor against the assignor, upon a note given for the back interest due on the contract at the time of the assignment.                                      ·       ·

Interest upon interest cannot be collected by law, except upon an agreement to pay it, made after the day of payment has passed.   But if it be paid voluntarily it is not usury.   And it may be lawfully included in a note, by the agreement of the parties; without rendering such note usurious.

But a reservation, in a new security, of compound interest which had accrued upon a sum previously due, made against the will of the debtor, and as a condition of forbearance upon the new security, affects the new security with usury, and renders it void.

Townsend v. Corning.

IN EQUITY. This case came before the court upon an appeal, by the defendant, from a decree of the late vice chancellor of the seventh circuit. The bill was filed by Townsend and others, to foreclose a mortgage executed by the defendant Corning, bearing date on the 21st of September, 1840, and conditioned to pay the plaintiffs, (as per bond collateral thereto,) $2500, the one half in one year and the remaining half in two years from date, with annual interest on all sums unpaid. The defendant put in an answer to the bill, setting up as a defence, that the mortgage was usurious and void. The answer stated that John Townsend and others, (constituting an association, known as the Syracuse Company,) had, at different times, theretofore, executed several contracts for the sale of certain village lots in Syracuse, to several persons named in the answer, which contracts had been assigned to one Wood, who had erected a valuable house on one of the lots ; and that afterwards and on the 25th of December, 1837, Wood, for a valuable consideration, assigned the said contracts to the defendant, and agreed with the defendant to pay up the intetest on the same, to the said 25th day of December ; and that he, accordingly, did execute and deliver to the plaintiffs' agent, a note, with Lawrence and Baker as his sureties, for $229,87, the amount of said interest. That in the spring of the year 1840, the plaintiffs commenced an action of ejectment against the defendant, for the recovery of the premises embraced in the said contracts, and that the same was noticed for trial and was on the circuit calendar in Onondaga county, to be tried, on the 21st of September of that year. That the defendant, thereupon, offered certain terms set forth in his answer, to procure a discontinuance of the suit, and for a general arrangement of the controversy between the parties ; which terms were rejected by the plaintiffs. The answer then proceeded to state, that the plaintiffs, thereupon, by their authorized agent, submitted to the defendant a statement in writing, containing the only terms upon which they would consent to discontinue the said suit and give farther time of payment. These terms were the *payment, in cash,* of all the arrears of interest upon the several

Townsend *v.* Corning.

contracts, up to the said 21st of September, 1840, including the interest embraced in the note of $229,87, and interest upon the interest, after the same became due, together with the costs of the ejectment suit, and also the costs in a suit prosecuted to judgment, upon the note in question, with interest on this latter sum ; the conveyance of the premises, by deed, to Corning, and the execution, by him, of a bond and mortgage to secure the payment of the balance, $2500, to the said company, in one and two years. It was then alleged in the answer, that the defendant being forced and compelled by his circumstances, did submit and agree to those terms thus proposed, and that in compliance with the requirements aforesaid, he paid the sum down which was thus exacted of him, amounting to $911,07, and executed the bond and mortgage as aforesaid. The above, therefore, is the corrupt agreement upon which the defendant relied, viz. the written propositions, and the agreement of the defendant accepting of the terms therein proposed.

On the 12th of March, 1844, the vice chancellor made a decree declaring the bond and mortgage valid securities, and directing a reference to a master to compute the amount due thereon. From which decree the defendant appealed.

*B. Davis Noxon, & R. S. Corning,* for the appellant.

*J. R. Lawrence,* for the plaintiffs.

GRIDLEY, J. Upon the statement of the facts respecting the alleged usurious agreement, and upon the proofs in the cause, the question arises whether there was any usury in the transaction proved.

If the bond and mortgage were usurious, it was not for any usurious interest *included in* those securities ; for they were executed for the exact amount of the principal moneys due. It must, therefore, have been on account of the *exaction of the payment of the interest upon interest, and the costs of the suit* upon the note given by Wood, Baker and Lawrence, as a

Townsend *v.* Corning.

condition of the discontinuance of the ejectment suit, and of giving time for the payment of the principal sum due.

(1.) As to the costs of the suit prosecuted against the maker of the note in question. It will be remembered that no interest had been paid on these contracts, for about the period of three years; and the note given to secure the interest that had fallen due before the assignment by Wood to Corning had been prosecuted to judgment and execution without collecting the money, though some of the witnesses were of the opinion that, by extraordinary diligence, the money might have been collected. Under these circumstances the plaintiffs commenced an action of ejectment to recover the land; and it was to settle this suit that the negotiation commenced, and was conducted by the parties. Now, had the defendant filed his bill to obtain relief from the legal forfeiture of his contract, would any court have granted it, without the payment of these costs, as well as the full amount due upon the contracts? The defendant was the assignee of Wood, and subject to all the equities that existed against him. Wood had given his own note with two sureties, to secure the interest up to a given day. The plaintiffs made a fruitless attempt to collect this note, and failing in that attempt, they resorted to the land. Would it have lain in Wood's mouth to allege that he had given them a security against himself and others, upon which a bill of costs had been incurred, by reason *of his own default* in paying it; and that it was inequitable in the plaintiffs to exact such costs as a condition of relief from the forfeiture? Might not the plaintiffs say to him, " We consented to receive your note, not in absolute payment of the interest due upon your contract, but as collateral security merely. We received it, under the obligation, if paid or collected, to apply it on the contract as payment; but if *not paid*, and by reason of such non-payment, a suit should become necessary, then, that such suit should be prosecuted at *your risk and costs?* You cannot complain of being subjected to any costs that were incurred and made necessary by your own neglect, and the violation of your own obligation. Nor does it lie in your mouth to say that a greater than the

ordinary measure of diligence *might* have enforced a collection from your sureties." I confess I do not perceive any answer to this argument. The note was neither an extinguishment nor a payment of the interest; and the costs incurred in the suit on the note, Wood was both legally and equitably bound to pay. It was equitable and right that he should do so. And had he come into a court of chancery, asking its equitable interference, to relieve him from the consequences of his own laches, and the legal forfeiture of his contract, that court would have said to him, that when he asked for equity he must do equity, and it would grant him no relief, except upon the condition of paying the costs in question. It is, however, argued that the defendant stands in a more favorable condition, in this respect, than Wood would have done. I am of the opinion that he does not. When this note was delivered and received by the plaintiffs, it was received under the implied condition that, upon a failure to collect the note, all the consequences of a legal forfeiture should attach to the lands, and the contract being forfeited, whoever seeks relief against the forfeiture stands, in this respect, in the place of Wood. The defendant took the land subject to all the equities and liabilities Wood was under in regard to it. Before any notice of the assignment, and of the conditions of the assignment of the several contracts by Wood to the defendant, the plaintiffs had a right to regard the defendant as standing in the shoes of Wood. I would also remark, here, that much as the conduct of the agent of the plaintiffs has been censured, for not assigning the judgment against Baker and Lawrence to the defendant, I can see nothing in his conduct worthy of blame. He knew nothing of the conditions of the agreement between Wood and Corning, nor which of them was to pay the interest that was represented by the note. The defendant is doubtless entitled to an assignment of the judgment ; and had he showed to the agent the agreement of Wood, to pay this interest, then I doubt not the judgment would have been cheerfully assigned. Indeed, this is the very reason given by the agent in his testimony, for refusing to assign the judgment. It was, therefore,

Townsend *v.* Corning.

neither oppressive nor usurious to exact the payment of these costs, as one of the conditions of discontinuing the suit in ejectment.

(2.) As to the exaction of the interest due upon the contracts, including the interest that had accrued upon the first amount of interest which had fallen due. It is, doubtless, settled in England and in this state, that this excess of interest cannot be collected by law, unless upon an agreement to pay it, made after the day of payment has passed. But it is equally clear that if it be paid *voluntarily, it is not usury.* It is paying no more than what is just and reasonable. A man agrees to pay $1000 at the expiration of five years from the date of his bond, with the interest at the rate of seven per cent *annually :* in other words, he agrees to pay $70 at the expiration of a year. Why should not that $70 draw interest from the time it falls due; in analogy to the legal obligation arising upon any other contract for the payment of money by a given day? If the same man had given his note or agreement to pay $70 at the end of a year, that instrument would carry interest upon the amount, from the day of payment. In relation to interest, upon interest however, I repeat, the law is otherwise. But though not collectable, except by a subsequent agreement, this interest may lawfully be included in a note, by the agreement of the parties ; and such note is *not usurious.* The case of *Kellogg* v. *Hickok,* (1 *Wend.* 521,) is a direct adjudication of this principle. The question, however, that is presented by the pleadings and proofs in this cause, is a different one. And, though it is possible that a distinction might be taken between this case and those reported in 7 *Paige,* 581, and 9 *Id.* 211, and in several other cases, yet I will assume, as the law of this case, that a reservation in a *new security* of compound interest that had accrued upon a sum previously due, *against the will of the debtor,* and *as a condition of a forbearance upon the new security,* affects the new security with usury, and makes it void. The question, thus, becomes one *of fact,* whether this excess of interest was exacted *against the will of the debtor,* and as a *condition of forbearance.* It will be borne in mind

that by the decision, in the case of *Kellogg* v. *Hickok,* (1 *Wend.*
521,) before cited, if these parties had accounted together con-
cerning the amount due, and *by the consent of the debtor,*
had included the compound interest in the bond and mortgage,
these securities would not have been usurious. If, therefore,
they are now to be held usurious, it must be upon the ground
that the payment of the interest upon interest was exacted
against the will of the defendant, and imposed upon him, as a
condition of giving time upon the principal sum. Now, in
point of fact, it no where appears in the proofs, that this excess
of interest was ever objected to by the defendant, or by any one
acting in his behalf; but on the contrary, it appears, (so far as
there is any evidence upon the subject,) that the controversy
was concerning the *judgment* against Baker and Lawrence,
survivors of Wood, which the defendant claimed to have as-
signed to him, but which was declined by the plaintiffs' agent.
James G. Tracy, the agent of the company, a witness of the
defendant, testified that he made out a statement of what was
due for interest, upon the several contracts, and for the costs in
the suit upon the note for $229,89, with interest upon these costs,
and the costs in the ejectment suit, and delivered it to some one
who applied to him to make it : that the amount of interest and
costs was $911,07, which was required to be paid down. This
statement was produced and made exhibit No. 3, and is a state-
ment of the amount due on each block or lot, both for principal
and interest, with interest computed upon the first instalments
of the annual interest respectively, with the costs, amounting
to $911,07. This statement contained an entry opposite to this
sum, in the following words. " To be paid in cash. Time to
be extended on bond and mortgage two years and ejectment
suit settled. Corning must secure and pay as above." The
witness further testified that he made up the statement, (*as to
interest*) *as it appeared on the exhibit, and for what " he
considered due justly to the company and for what they had
a legal right to ask."* This last part of the testimony was
taken under objection, and if the reservation of the compound
interest were an act of usury, *per se,* then the objection would

not be well founded ; but for the purpose of showing the *intent* of the parties, upon a question whether the including of this excess of interest was voluntarily agreed to, and not imposed as a compulsory condition of giving time on the principal sum, I think it was admissible.   Here, then, was a proposition made in writing, of the amount claimed to be due, and the payment of which was required as a condition of settling the ejectment suit, embracing a statement of the interest account, which was believed to be correct by the agent who made it.   Now was this *voluntarily agreed to ?*   I repeat, there was no attempt to show that any objection was made to this mode of computing the interest, or any question raised concerning it.   The only question put to the witness, as to what occurred, during the negotiation, was as to his refusal to assign the judgment, which he declined doing, upon the ground I have already stated.  The only other witness who gives any evidence concerning this part of the case, is Henry Davis, who testifies that at the request of the defendant, he went to the agent of the Syracuse Company ; that exhibit No. 3, is a statement which the agent gave him, at the time, and that he (the agent) proposed to receive the $911,07 in cash, and to give some time for the payment of the balance, on its being secured by bond and mortgage.   The witness then proceeds as follows.  " I told him there was a judgment against Baker and Lawrence, which I thought Corning entitled to have an assignment of.   He declined giving an assignment, and said he would not vary from the terms of this statement.   I paid him $911,07."   Now, to what did the agent refer, when he declined to vary from the statement?   Clearly to the assignment of this judgment, which would materially vary the proposition for a settlement ; and I doubt not that Mr. Townsend had reference to the same inadmissible condition, when he gave his instructions to the agent, as is mentioned in the cross-examination of this witness.   I am strengthened in this opinion by a statement in the answer, at the 42d folio, where it appears that the defendant made a proposition to adjust the existing controversy, on having this judgment assigned to him, which Mr. Townsend declined to do.   There is, there-

fore, no evidence to warrant the conclusion that the excess of interest was ever objected to, or drawn in question at all. Nor does it appear that the question of an extension of *time* was ever agitated by the parties. It is true, that it was entered in the statement of the agent; but that it was ever asked for, or negotiated about, the case is barren of proof. Nor is there the least ground to believe that the terms of settlement would have been at all different if the whole sum, including the principal, had been paid down. The cross-examination of Davis, especially the closing part of it, shows that what was desired on the part of the defendant was to settle the ejectment suit, upon the condition of getting an assignment of the judgment; and that neither the question of *interest* nor of *time* was at all alluded to.

For these reasons, the decree of the vice chancellor must be affirmed, with costs.