# WHEELING.

## BARBOUR *v.* TOMPKINS.

*(Absent, GREEN, JUDGE.)

Submitted January 23, 1888.—Decided June 30, 1888.

1. USURY—AS A DEFENCE—HOW MADE.

   The defence of usury is personal to the debtor and he can only make such defence by, in some mode either before a court or a commissioner distinctly raising the defence that he has been charged in the note or other demand a greater interest than is allowed by law. (p. 416.)

2. USURY—ALLOWANCE BY COMMISSIONER—EXCEPTIONS TO REPORT.

   It is not always necessary that the defence of usury should be raised by plea or answer. It may be relied on before a commissioner; and if the commissioner audits a usurious claim against a debtor, and he has not raised such defence in any other mode in the suit, he must in a written exception to the report, signed by counsel or himself, clearly and distinctly except on the ground that in the report interest has been charged against him in excess of what the law allows. (p. 416.)

3. USURY.

   A mere request by himself of the commissioner to make an alternative statement of the claim against him, charging the legal rate of interest, which the commissioner does, and then the commissioner reports the claim against him at ten *per cent.*, or with illegal interest, and he does not except to the report on the ground that usurious interest is charged against him, fails to raise the defence of usury. (p. 417.)

4. USURY—INTEREST ON INTEREST—WHEN NOT USURY.

   An agreement to pay interest on interest is valid, if made after the interest which is to bear interest has become due and payable. (p. 420.)

5. USURY—INTEREST NOTES—TRUST-DEED SECURING PRINCIPAL DEBT.

   Where a bond providing for the payment of interest annually was secured by a deed of trust, and afterwards, for several years, when the interest was due and payable, interest-notes were executed, bearing the same rate of interest as the original bond, as between the parties the deed of trust will secure the payment of in-

---

*On account of illness.

terest on these new interest notes, but such interest can not avail as against subsequent creditors or purchasers. (p. 420 *et seq.*)

6. USURY—FINDING BY COMMISSIONER.

Where a bond provided for the payment of a sum of money three years after date, with interest at ten *per cent. per annum* from date, and the claim was audited by the commissioner at ten *per cent.* to the time the report was completed, it should bear interest, on the aggregate amount of principal and interest, from that date, at the contract rate of ten *per cent. per annum* until paid. (p. 422.)

7. SALE—DOWER—JOINDER OF WIFE IN TRUST-DEED.

Where a deed of trust is executed in which the wife joins, and there are liens on the land both prior and subsequent to the trust-deed, the wife has no contingent right of dower except in the surplus, after the trust-lien is paid in full, and on this contingent right of dower the trust-lien creditor has the first and only lien, there being but one deed of trust; and in such case the decree ought to provide that the land should be sold clear of the wife's contingent right of dower, if it appears at the sale it is necessary to pay the full amount of the trust-lien. If not, it should be sold subject to the dower. (p. 423.)

8. SALE—DEED OF TRUST—TERMS OF SALE.

Where a deed of trust is executed, and there are a number of prior judgment-liens on the land, and it is necessary to resort to a court of equity for the enforcement of the liens, the court will fix the terms of sale according to the rules of equity, without regard to the terms of the sale fixed in the trust-deed. (p. 423.)

*A. F. Mathews* for appellant.

*Knight & Couch* for appellees.

JOHNSON, PRESIDENT:

This is a creditors' suit, brought to enforce the lien of divers judgments against William H. Tompkins. The bill was filed in the Circuit Court of Kanawha county in November, 1883. On the 11th day of June, 1884, the cause was referred to a commissioner to ascertain and report— *First*, the nature and amount of the complainants' claim; *second*, the real estate, and interest in real estate, owned by the defendant, W. H. Tompkins, upon which complainants' judgment is a lien, and the quantity, location, and probable value thereof, together with all other liens, and their priorities; *third*, whether the rents, issues, and profits of said real estate will satisfy the liens thereon, according to their re-

spective priorities, within five years; and *fourth*, any other matter the commissioner may deem pertinent, or any party in interest may require. The commissioner ascertained the liens, and their priorities.

The trust-deed executed by Tompkins and wife to secure a debt to John S. Scully is filed as an exhibit with the bill, and shows that it was executed to J. W. Mathews, trustee, on the 13th day of October, 1881, and conveys three several tracts of land to secure to Scully the payment of a bond of the same date with the deed, for $7,000.00, due three years after date, "with interest from date, to be paid annually at the rate of ten *per centum per annum;* and it is understood and agreed by and between the parties to this deed that in case default is made in the payment of any annual instalment of interest when due, as aforesaid, or in the payment of the whole amount, principal and interest, when due at the maturity of said bond as above stated, then this deed shall be enforced," etc. The deed was admitted to record on the 17th day of October, 1881. On the 26th of November, 1881, John S. Scully assigned the said $7,000.00 note to A. F. Mathews. It also appears from the record that the interest was not paid annually; but on the 13th of October, 1882, Tompkins executed his note to A. F. Mathews for $233.33, the interest then due. On the 13th October, 1883, the said Tompkins executed his note to said Mathews for $700,00 interest; and on the 13th of October, 1884, another note for $700,00 interest; and on the 13th of October, 1885, still another note for $700.00, for interest.

The commissioner ascertained the amount of the debt due to Mathews by calculating the interest upon the interest-bearing notes at ten *per cent.*, as each note provided, charging Tompkins with the principal, then with the interest-notes and interest on the notes at ten *per cent.*, and fixed the amount due Mathews on the 1st day of March, 1886, at $9,969.09; and in his report says: "I report the balance due March 1, 1886, on this debt, to be $9,969.09." He made a statement of the debt at six *per cent.* interest, without calculating interest on interest, and ascertained the amount to be by this calculation, on the 1st of March, 1886, $8,361.27. He then says, "The above statement is made at the request of

counsel of W. H. Tompkins, the defendant. The original note secured by the trust-deed and the latter itself called for interest payable annually." Then he made a statement calculating interest at six *per cent.*, and charging interest on interest at six *per cent.*, and by this mode ascertained the debt to be, of March 1, 1886, $8,464.79. The plaintiffs excepted to the report, as follows :

" Complainants, by counsel, except to so much of the foregoing report as ascertains and allows ten per cent. interest on the trust-debt to J. W. Scully, on the ground that a court of equity will not enforce the collection of a usurious claim where the usury is apparent upon the face of the trust-deed, and notes thereby secured, even though the defendant does not plead usury, and complainants insist that the true amount of said trust-deed debt is, as of March 1, 1886, $8,861.27." The only other exception to the report is by the counsel of Tompkins. His first exception was that the amount found due the plaintiffs was wrong, as there ought to have been a credit of $686.40 allowed. The second was a general exception " to the report of all other judgments allowed, except the judgment of S. S. Moore." This exception, the exceptor says, is based upon the terms and provisions of the act of 1882, ch. 126, and in substance says that none of the defendants, by petition or otherwise, complied with the act ; it not appearing that any of the judgment-creditors or trust-deed creditors " have, by any presentation, proof, pleading or otherwise, so asserted their claims as authorizes the said commissioner to report the same." The third was " for other reasons appearing upon the face of the papers."

On the 16th day of July, 1886, the cause was heard on the report of the commissioner and exceptions, and the court sustained the exception of the complainants " to so much of the commissioner's report as computes the interest at ten *per cent.* on the trust-deed debt from defendant, W. H. Tompkins, to the defendant, John S. Scully ; said usurious interest on interest appearing upon the face of the trust-deed securing said debt. * * * And said debt is here ascertained to be $8,361.27, with interest from March 1, 1886, as reported by said commissioner in one phase of his said report, allowing legal rate of interest on said debt." The de-

cree also sustained the first exception of defendant, Tompkins, to the amount of debt found due the plaintiffs, and reduced one item from $1,084.01 to $322.70, as of March 1, 1886, —the plaintiff consenting to the correction—overruled Tompkins's second exception, confirmed the report as thus corrected, set out the debts as to their priorities, as ascertained by the report, gave the defendant 120 days to pay the same ; and, in default of payment required commissioners therein appointed to sell the real estate therein mentioned.

The defendant, A. F. Mathews, under section 5 of chapter 134 of the Code, gave notice of a motion to re-hear said cause, and to reverse the decree for the following errors therein appearing :. (1) because said decree sustained, instead of overruled, as it should have done, the exceptions of the plaintiff to the report as to the debt due A. F. Mathews ; (2) because by said decree the amount of said debt was fixed at $8,361.27 ; (3) because said decree did not overrule said exception, and then confirm, without modification, the said report, and decree to said Mathews the amount so reported, to wit, $9,969.09, as of March 1, 1886; (4) because, if it was not proper to fix the debt at said amount, it should have been fixed at $8,464.79, as of March 1, 1886, as in one of the alternative statements in the report; (5) because the decree did not direct the sale of the lands conveyed in said trust-deed to be made free from all contingent right of dower of the wife of defendant, Tompkins, she having joined in the deed; (6) because said decree did not direct the ascertainment of the value of said contingent dower-interest in said land, and its appropriation to the payment of said debt, the only lien or charge thereon; (7) because said decree did not with sufficient distinctness ascertain and fix the priorities of said liens; (8) because said decree, in fixing the terms of sale of the lands conveyed by said trust-deed, did not follow, but departed from, the terms prescribed and contracted for by said deed.

The court, on the 23d day of September, 1886, overruled the motions, and thereupon the said A. F. Mathews appealed to this Court from the last order, as well as from the decree of the 16th day of July, 1886.

· It is insisted in the argument that, without a plea or de-

fence of usury, it is the duty of the court, whenever usury appears on the face of the paper in which the debt is claimed, to purge it of its usury, because the statute declares that the promise to pay a greater rate of interest than six *per cent.* shall, as to the excess of interest, be void, and therefore the complainant, by counsel, excepted to the report of the commissioner, because it allowed to Mathews on his claim ten *per cent.* interest, as provided in the bond and deed of trust; and this though no plea or defence of usury by the debtor has been made. And, to sustain this position, counsel for the appellees cite, *Bank* v. *Waggener*, 9 Pet. 400; *Levy* v. *Gadsby*, 3 Cranch 186; *Turner* v. *Turner*, 80 Va. 381; *Shipman* v. *Bailey*, 20 W. Va. 144.

In *Bank* v. *Waggener*, the action was on a promissory note of $5,000.00. Mr Justice Story, in his opinion, page 393, says: "The plea of payment was put in, upon which issue was joined, and it was agreed between the parties, that either party, under the issue, might give in evidence any special matter which could be specially pleaded." This will explain what the justice means when on page 400, the page cited, he said: "Now, it distinctly appears in the evidence, as has been already stated, that no interest or discount whatever was actually taken on the note, and on the face of the note there was no reservation of usury on the face of the transaction. The case then resolves itself into this inquiry: whether, upon the evidence, there was any corrupt agreement or device or shifts to reserve or take usury; and, in this aspect of the case, the *quo animo*, as well as the acts of the parties, is most important." This evidence, which the court proceeds to review, was introduced under what was equivalent to a plea of usury.

In *Levy* v. *Gadsby*, Marshall, C. J., said: "It was slightly contended by counsel for the plaintiff in error that when usury has been specially pleaded, and the evidence adduced to support such plea has been adjudged by the court to be inapplicable to the facts so pleaded, the same evidence can not be admitted upon the plea of *non assumpsit*. No cases in support of this position have been cited, and it does not appear to be reasoning from analogy. In cases where there are special and general counts in a declaration, and the evi-

dence does not support the special counts, the plaintiff is allowed to apply the same evidence in support of the general counts. On a parity of reasoning, the defendant should be permitted to give in evidence, upon the plea of *non assumpsit*, the same facts which were adjudged inapplicable to the special pleas, but which might have been received on the general plea if the special plea had not been pleaded." This amounts to saying that usury may be proved under the plea of *non assumpsit*, which has been decided frequently. But it is nowhere contended, by any authority I have seen, that if it is not in some form pleaded, though it appears on the face of the papers or evidence, it can be taken advantage of even by the debtor himself, or by the court.

The case of *Turner* v. *Turner* is as inapplicable as the others, because it appears from the opinion of Hinton, Judge, that, by section 8 of chapter 122 of the Acts of Virginia Legislature 1874, it is provided that " where the contract or assurance is in writing, and usurious interest is provided for therein, judgment shall be rendered for the principal sum only, although the defendant may have failed to file a plea of usury." There is nothing in *Shipman* v. *Bailey* on the question.

So no authority is cited, and we believe none can be, that would authorize a court, without the defence of usury in some manner being interposed, at the instance of the creditor, the debtor, or on its own motion, to purge the debt of usury. The plaintiff here, as we shall presently see, had no right to ask it; and, unless the debtor himself had put in the defence of usury, he could not, by merely asking the court, on the face of the report and accompanying papers, have the court to purge the debt of usury appearing on the face of the note and deed of trust. Therefore, there was nothing in his general exception to the report, " for other reasons apparent on the face of the papers." The defence of usury is personal to the debtor. Therefore, in the debtor's lifetime, a creditor can not rely upon such defence to defeat the claim of another creditor in whole or in part. *Lee* v. *Feamster*, 21 W. Va. 100. The term " plea " is used in this case, but it means defence, because it could be taken as well by exception to a commissioner's report, as by a plea or answer filed in the suit.

The defence could not be made in this case, Tompkins being in life, by any one except himself. Did he rely on such defence? He did not, certainly, either by plea or answer. He did not make such defence, as he did not in terms except to the commissioner's report because it audited the claim against him at ten *per cent.* If he then made such defence, it must have been that he did what was equivalent to excepting to the report, by asking an alternative statement to be made showing what the claim would amount to, calculating the interest at six *per cent.* It is not said anywhere in the record that Tompkins did that. The commissioner made such statement, and says, in his report, he made it " at the request of counsel of W. H. Tompkins." This request of the counsel was not a pleading to bind the party. He might not have wished it to be done. Many men are averse to pleading usury, and would rather suffer in their property by not pleading it than suffer in their persons by doing so. If he had, in this instance, wished the defence interposed after the alternative statement had been made by the commissioner, and the commissioner ignored it, and reported the debt at ten *per cent.* because, as he supposed, the defence of usury was not in, then, certainly, he would have excepted to the report on the ground of usury, and because the commissioner did not adopt the alternative statement. He clearly did not intend to do this, as he excepted to the report on other grounds, and not on this. There is nothing here that approaches an exception to the commissioner's report on the ground of usury.

A report of a commissioner will be presumed to be admitted as correct by the parties, both as to principles and sufficiency of evidence, except so far as it is objected to by proper exception. *Ward* v. *Ward*, 21 W. Va. 262. An exception must be a distinct, positive objection in writing, an allegation of insufficiency or error, something to apprise the commissioner or court of the subject of the complaint, and to give to the opposite party fair notice, of what the objection is. Exceptions to a commissioner's report partake of the nature of a special demurrer, and the party complaining must point out the errors with reasonable certainty, so as to direct the attention of the court to them; and the parts not

thus excepted to are admitted to be correct. *Chapman* v. *Railroad Co.*, 18 W. Va. 185; *Crislip* v. *Cain*, 19 W. Va. 438. Exceptions require the signature of counsel, and are a written enumeration of the alleged errors, and of the corrections proposed; and they should be so framed as not merely to allege error in general terms, but to enable the court to decide distinctly on each point in dispute. Adams Eq. 384, 386. Whatever is insisted on before a master by way of argument or objection is considered as waived or abandoned if it is not made matter of exception, unless, indeed, it manifestly appears upon the face of the report itself that the master has committed an error which ought to be corrected. *Gordon* v. *Lewis*, 2 Sum. 143. Exceptions to a master's report should be so framed as not merely to allege error in general terms, but should be sufficiently definite and explicit to enable the court understandingly to decide on each point in dispute. Allegations of error without pointing out any particulars, are clearly insufficient. *Greene* v. *Bishop*, 1 Cliff. 186; *Dexter* v. *Arnold*, 2 Sum. 108; *Harding* v. *Handy*, 11 Wheat. 103. If no exceptions be filed to a report while the same remains in the hands of a commissioner, he is not required to retain with his report the evidence which was before him, and on which he acted. *Thompson* v. *Catlett*, 24 W. Va. 524.

If the statute of limitation is not specially pleaded in a cause, and is not relied on before the commissioner, and the commissioner fails to recognize the statute, or disregards it, and no exception is made to the report for that reason, the appellate court will consider the statute of limitation out of the cause, although the report on its face shows that some of the claims allowed by the commissioner were barred. *Woodyard* v. *Polsley*, 14 W. Va. 214. *In Campbell's Adm'r* v. *White*, Id. 122, it was held that where some of the accounts are disputed, or objected to as improper to be allowed, and it is doubtful whether they should be allowed, it is not improper for the commissioner to direct the attention of the court to them by alternative statements leading to different results, and thus leave the court to draw its own conclusions as to which statement should be confirmed.

We have seen how stringent is the chancery-practice as to

exceptions to commissioner's reports: that they must be in writing and signed by counsel; that they must call attention to the precise question to be raised thereby, so as to enable the court intelligently to pass upon it; that, unless such an exception is filed before the commissioner, he is not required to send to the court the evidence on which he has acted. Now, can it for a moment be insisted that a mere request to the commissioner, to make out the statement of a claim at six *per cent.*, or legal interest, when the bond calls for ten *per cent.*, is in itself an exception to the report of the commissioner which allows the claim at ten *per cent?* The statement of the debt at six *per cent.*, if not adopted by the commissioner, amounts to nothing, unless an exception is made to the report of the commissioner, insisting that the debt should be purged of usury, and that the alternative statement shows all the debt legally amounts to. Where the commissioner repudiates an alternative statement made by request, it amounts to nothing, unless the report is excepted to. Here, then, under no rule of chancery-practice, can it be said there was by the debtor any defence of usury put in, either by plea, answer, exception to the commissioner's report, or otherwise. Therefore the question of usury is out of this cause.

Some questions, however, do arise on the face of the report which are proper for our consideration. The $7,000.00 bond reads: " Three years after date, with interest from date, to be paid annually at the rate of ten per centum per annum, I promise and bind myself, my heir," etc., " to pay to John S. Scully, his heirs or assigns, the just and full sum of seven thousand ($7,000.00) dollars. Value received. As witness my hand and seal this 13th day of October, 1881. W. H. TOMPKINS. [Seal.]" The debt of Mathews is, of course, a lien on the lands embraced in the deed of trust, but it is not the first lien. A number of judgment-liens have priority over this, the only trust-deed lien.

The commissioner calculated the interest upon the interest. Had he the right, under the law, to do this? The bond, which is the contract, provided in express terms that the interest was to be paid annually, and for several years new notes for interest were given, and on these notes interest

was charged; but it was by the commissioner only compounded when the new interest notes covered it, and from the time they ceased, at ten *per cent.* on the debt, to the time the report was made, to wit, March 1, 1886. An agreement to pay interest on interest is valid if made after the interest which is to bear interest has become due and payable. *Craig* v. *McCulloch,* 20 W. Va. 148. In this case the bond was similar to the bond here, and the interest was calculated by compounding it, charging interest upon interest and an obligation executed for the aggregate amount, and to secure this bond a deed of trust was executed; and it was held that this was not usurious or inequitable. This decision is conclusive that the debt is valid, including the compound interest in the cause here; and as it was provided for in the bond and recognized by the deed of trust, it would constitute a part of the trust-deed debt and a lien on the land subject to the trust-deed as against the grantor, Tompkins.

This Court held in *McCarty* v. *Chalfant,* 14 W. Va. 531, that a deed of trust, *bona fide* made, may be for further advance by the *cestui que trust,* as well for present debts and liabilities; and it will be valid between the parties and against subsequent purchasers, (after the advancements were made,) with constructive or actual notice of the deed of trust, not only as to the indebtedness at the execution of the trust, but also subsequent advancements made by the *cestui que trust,* on faith of the deed of trust, subsequent to the execution thereof, to the extent of the amount specified in the trust. I suppose there could be no doubt, if a deed of trust were executed to secure a negotiable note, " and any renewal or renewals thereof," and the note, from time to time, was renewed, and the interest added, that the trust would cover this accumulated interest, which would bear interest. 1 Jones Mortg. § 355. Accrued interest is a debt, and even where an agreement made at the time of the loan for converting interest into principal, from time to time, as it shall become due, is not allowed, because it is in some States regarded as oppressive and usurious; yet, when it has become due, there is no objection to the parties converting such interest into principal, and securing it by a further mortgage.

It is regarded in the nature of a further advance; and not only may it form the consideration of a second or further mortgage, but, as between the parties, it may be tacked to the first mortgage. Id. § 652; *Quimby* v. *Cook*, 10 Allen 32; *Wilcox* v. *Howland*, 23 Pick. 167; *Pinckard* v. *Ponder*, 6 Ga. 253; *Townsend* v. *Corning*, 1 Barb. 627; *Williams* v. *Hance*, 7 Paige 581; *Eslava* v. *Lepretre*, 21 Ala. 504; *Banks* v. *McClelland*, 24 Md. 62; *Fitzhugh* v. *McPherson*, 3 Gill 408; *Hale* v. *Hale*, 1 Cold. 233; *Parkham* v. *Pulliam*, 5 Cold. 497.

Regarding this interest on interest in the nature of an advance, we think, as between the parties, as the note was given, therefore it can be tacked onto the first mortgage, but will not be a prior lien over judgments recovered after the mortgage was executed.

But did or did not the court err in its decree, which failed to permit the debt of Mathews to bear interest at ten *per cent.* until it is paid? This debt, by the decree, with the other claims, is "adjudged to be a lien against the defendant's real estate, with interest thereon from the 1st day of March, 1886, until paid;" thus making it bear only six *per cent.*, according to the statute. Upon the question here presented there is much conflict of authority. In *Brewster* v. *Wakefield*, 22 How. 118, it was held that, when the note was entirely silent as to the rate of interest thereafter, if it is not paid at maturity the creditor is entitled to interest after that time by operation of law, and not by virtue of any promise that the debtor has made; that, if the right to interest depended upon the contract, the holder would be entitled to no interest whatever after the date of payment. To the same effect are *Cook* v. *Fowler*, L. R. 7, H. L. 27; *Burnhisel* v. *Firman*, 22 Wall. 170; *Eaton* v. *Boissonnaull*, 67 Me. 540, 24 Amer. Rep. 52; *Pearce* v. *Hennessy*, 10 R. I. 223; *Society* v. *Loomis*, 42 Conn. 570; *Ludwick* v. *Huntzinger*, 5 Watts & S. 51; *Henderson* v. *Laurens*, 2 Desaus. Eq. 170; *Briggs* v. *Winsmith*, 10 S. C. 133, 30 Amer. Rep. 46; *Newlon* v *Kennerly*, 31 Ark. 626, 25 Amer. Rep. 592; *Henry* v. *Thompson*, 1 Min. 209; *Kitchen* v. *Bank*, 14 Ala. 233; *Burns* v. *Anderson*, 68 Ind. 202, 34 Amer. Rep. 250.

In Massachusetts it is held that the note bears the same rate

of interest after the time of payment; and the reason given is that " the plaintiff receives interest, both before and after the note matures, by virtue of the contract, as an incident or part of the debt, and is entitled to the rate fixed by the contract.'' *Brannon* v. *Hursell,* 112 Mass. 63. To the same effect are *Cecil* v. *Hicks,* 29 Grat. 1, 26 Amer Rep. 391; *Overton* v. *Bolton,* 9 Heisk. 762, 24 Amer. Rep. 367; *Pridgen* v. *Andrews,* 7 Tex. 461; *Hopkins* v. *Crittenden,* 10 Tex. 189; *Spencer* v. *Maxfield,* 16 Wis. 178; *Pruyn* v. *Milwaukee,* 18 Wis. 367; *Etnyre* v. *McDaniel,* 28 Ill. 201; *Hand* v. *Armstrong,* 18 Iowa 324; *Thompson* v. *Pickel,* 20 Iowa 490. I have found these authorities collected in a note to *Briggs* v. *Winsmith,* 30 Amer. Rep. 46, and have been saved much labor.

The principle is settled in the last cases cited, is also settled in *Shipman* v. *Bailey,* 20 W. Va. 140, although in that case the note provided for the payment of " eight *per cent.* from date until paid;" but the court held that, in contracts for the payment of money, the interest on the principal sum is a legal incident of the debt, and a part of the contract; and whenever there is a contract for the payment of a specified legal rate of interest, whether such rate is fixed by the contract itself or by the law of the place where it is made, the obligation of the contract extends to the time of payment of such interest as fully as it does to the payment of the principal sum, and courts have no more power to change the rate thus fixed than they have to dispense with the enforcement of the contract either in whole or part.

In *Pickens* v. *McCoy,* 24 W. Va. 344, it was held that where a bond, by its terms, bears interest at three *per cent. per annum* from date, a decree for the payment thereof should be for the aggregate sum due, the interest being computed at the rate of three *per cent.* until paid. A decree providing for interest at six *per cent.* on such aggregate sum is erroneous. It is therefore settled with us that the contract rate shall govern to the end, until the note is paid, whether that rate is higher or lower than the legal rate. In this case, therefore, the decree is erroneous in fixing the interest, from the date of the commissioner's report, at six *per cent.* As to this debt, it should have provided that the sum found by the

commissioner should bear interest at ten *per cent.* until paid. The decree should also have directed the commissioner, in selling the land, to sell it clear of the wife's contingent right of dower, if it should appear at the sale that it is necessary to pay the full amount of the trust-lien. If it will bring sufficient to pay that lien, after discharging prior liens thereon, then it should be sold subject to the wife's contingent right of dower. The decree should have so provided, so bidders would know what they were buying at the sale. It was not error to fail to ascertain what was the value of the contingent right of dower, because such value could not, in this case, be ascertained until it was known what the land would bring at the sale. When that is ascertained by the sale, then the court will, if it is sold, fix its value, and it will then be paid in part discharge of the Mathews lien,—the only one thereon. We think the decree with sufficient certainty fixed the priorities of the liens.

It is also assigned as error that the terms of the deed of trust were not followed in the decree. Several Virginia cases are cited. The rule in Virginia is different from ours. Here it is held that where there are judgment-liens, and trust-deed liens on land, and a resort to a court of equity is necessary to fix priorities and enforce the liens, that the rules of a court of equity will be followed in the terms of the sale. This, certainly, would be so when, as here, there are many judgment liens prior to the trust-deed. The court did not err in decreeing the sale on time.

For the foregoing reasons the order of the judge in vacation, made on the 23d day of September, 1886, and the decree rendered in the cause on the 16th day of July, 1886, are severally reversed, with costs, and the said decree must be corrected by changing the report of the commissioner, in this : that the interest shall be calculated on the principal sum at ten *per cent.* from the date of the bond to 1st day of March, 1886, which shall, as against subsequent liens, be a valid lien, and as to the defendant, Tompkins, if the property should sell for enough to pay all the liens thereon, the sum found by the commissioner is correct; but, as against all the parties, he is entitled to have interest on his claim calculated at ten *per cent.* up to the 1st of March, 1886, and then, on that

aggregate sum, at ten *per cent.* The decree must also provide for the sale free of the contingent right of dower of Mrs. Tompkins, if necessary, as hereinbefore set forth ; and this cause is remanded for further proceedings to be had in accordance with this opinion.

REVERSED. REMANDED.