# CHARLESTON.

BUILDING & LOAN ASSOCIATION *v.* WESTFALL.

Submitted February 23, 1903—Decided March 15, 1904.

1.  DEMURRER.—*Record—Order.*

     A demurrer copied into the record by the clerk, no order or decree of the court having been entered in the cause tendering or filing the same, nor in any manner recognizing it as tendered or filed, is not a part of the record and cannot be considered by the Appellate Court. (p. 310).

2.  USURY MAY BE AVERRED IN ASSURANCE IN GENERAL TERMS.

     In a suit in equity to enforce a specific lien, to make the defense of usury the defendant may in his answer in general terms aver that the contract or assurance on which the proceeding is founded was for the payment of interest at a greater rate than is allowed by law. (p. 314).

3.  BUILDING AND LOAN ASSOCIATION.—*Usury.*

     In such suit where the plaintiff, a Building and Loan Association, was claiming a balance due it according to the terms of its contract, of $670.40, as of the 30th of November, 1899, and the defendant by his answer says that his payments as shown by his pass book furnished by plaintiff aggregated $639.70; that the association charged $4.00 per month interest on the $800.00 loan, and $4.00 a month premium thereon, and $4.80 dues on the eight shares of stock upon which the loan was made and that on the first day of September, 1898, he only owed the plaintiff $317.65 with interest from that day; that from the 1st day of September, 1898, he made default in the payment of dues;

interest, premiums and fines and has continued to do so from
that time to this; and further answered "that under the terms
of said deed of trust, if default should be made, the whole debt
should become due and a mere intetrest bearing fund." *Held:*
Such answer did not raise the question of usury. *Held, further:*
'That the defense of usury not being made by the defendant by
his answer, the commissioner was not warranted in applying all
payments made by defendant of interest, premium, dues and
fines, on account of said loan of $800.00, and interest at the rate
of six per cent per annum. (p. 315).

4.  USURY MUST BE PLEADED.

In a suit brought directly against the defendant to enforce
the collection of a demand the defense of usury must be pleaded
either by special plea or answer, or it cannot be relied on at the
hearing. (p. 315).

5.  SALE OF REAL ESTATE—*Decree—Error.*

It is error to decree the sale of real estate by a special com-
missioner in a cause without specifying therein the terms upon
which the sale is to be made. (p. 316).

Appeal from Circuit Court, Upshur County.

Action by the Washington Building & Loan Association
against G. D. Westfall and others. Decree for defendants, and
plaintiff appeals.

*Reversed.*

FORREST W. BROWN and G. M. FLEMING, for appellant.

YOUNG & McWHORTER and C. C. HIGGINBOTHAM, for ap-
pellees.

McWHORTER, JUDGE:

Granville D. Westfall subscribed for eight shares of stock in
the Washington National Building and Loan Association, of
Washington, D. C. The association advanced to him a loan of
$800.00, the par value of eight shares of stock, in redemption
thereof. Westfall executed his bond, dated July 30, 1894, pay-
able to said association in the sum of $1,600.00, with the follow-
ing conditions: "The conditions of the above obligations are
such that if the above bound Granville D. Westfall shall well
and truly, in the manner prescribed by its charter and by-laws,
pay the said association monthly installments of Twelve and
80-100 Dollars each from the first day of August, 1894, until

such time as the shares of stock hereinafter referred to shall be fully paid up; but no payments on account of stock nor premiums shall be exacted for a longer period than 84 months from the date thereof; but should said shares of stock fail to mature on or before the expiration of said period of 84 months, then 6 per cent. per annum on the original amount loaned shall continue and be paid in monthly installments until said stock shall mature, when all payments shall cease and the mortgage be cancelled, in consideration of the sum of Eight Hundred (800) Dollars advanced to him by said Association for the redemption of eight (8) shares of stock thereof and shall in accordance with said charter and by-laws during the time pay all fines and charges and shall faithfully perform all other obligations to said Association as provided and imposed by and in pursuance of said charter and by-laws and any amendment thereto, then this obligation to be void, otherwise to remain in full force and virtue. The said Granville D. Westfall hereby waives the benefit of his homestead exemption of this bond and hereby agrees that if suit is brought on this bond or to foreclose the mortgage given to secure the same, then upon such suit or foreclosure the same to be taxed as costs. G. D. Westfall. (L. S.)."

And made the following assignement to the said Association of his stock: "For value received, I hereby assign to the Washington National Building and Loan Association, of Washington, D. C., eight (8) shares of stock therein this day redeemed at One Hundred Dollars per share. Witness my hand this 30th day of July, 1894. G. D. Westfall. (L. S.)."

On the same day he conveyed to Josiah Stoddard and Addison G. DuBois, trustees of said Association, a tract of eleven and one-fourth acres of land in Upshur County "in trust for the following uses and purposes: First, that the party of the first part may retain quiet possession of said property so long as there shall be no default on the part of the said Granville D. Westfall in performing the condition of the said Bond or complying with the covenants herein contained. Second, That upon such default, the said trustees or either of them or the survivor of them thereunto required by the board of directors of said Association shall sell the property hereby conveyed or so much thereof as may be necessary at public auction on the

premises after having given ten days notice of the time and place of sale in some newspaper published in Upshur County, W. Va., and upon the following terms: For cash as to so much of the purchase money as may be necessary to pay the expenses of executing this trust and the balance that shall be ascertained by the said Board of Directors to be due on said bond, the whole amount of which it is agreed shall upon such default at once become due and payable together with all fines, charges or other money at that time due said Association on account of the debt evidenced by the board hereby secured; and as to the residue of the purchase money upon such terms as to cash or credit as the trustees may determine—the credit payments if any to be secured by lien on the property and after paying the debt secured by said bond, the balance, if any, shall be paid to the said Granville D. Westfall, his heirs, personal representatives or assigns. It is further covenanted between the parties hereto that the said grantors will, so long as the bond hereby secured remains unpaid, keep the buildings on said property hereby conveyed insured for the benefit of the beneficiary hereunder in some solvent insurance company, for at least the sum of Eight Hundred (800) Dollars. And the said grantors further covenant that should they fail to do so, the said Association or its assigns or the trustees in this deed shall be at liberty to insure the said buildings for at least the sum aforesaid and all sums of money so paid shall be deemed and treated as secured by this deed as a part of the cost and expenses of this trust and be paid out of the proceeds of sale of said property if not otherwise paid. The said party of the first part covenants that he has the right to convey the property aforesaid to the parties of the second part; that the same is free from incumbrance, that he will warrant generally the title hereto, and that the party of the first part will execute such further assurance thereof as may be requisite." Which deed of trust was duly acknowledged and recorded.

The said Westfall having made default, the said Building and Loan Association filed its bill in the circuit court of Upshur County against said G. D. Westfall, Annie L. Post and Josiah C. Stoddard and Addison G. DuBois, trustees, alleging the loan to the said Westfall on the 30th day of July, 1894, on the said eight shares of stock subscribed for and owned by him and

the execution of the bond and the said deed of trust and the assignment of the said shares of stock to the company, so redeemed by it, at $100.00 a share, and alleging that there was a balance due September 30, 1898, of $709.13. If payment should not be made by September 30, 1898, twenty-six and two-thirds cents per day thereafter should be added to said balance to cover interest and premium; that after bringing said suit and before the filing of its bill there had been paid on said interest and premium, dues and fines, the sum of $100.00; that by deed of April 6, 1895, said Westfall conveyed said eleven and one-fourth acres of land to the defendant, Annie L. Post, by deed of that date, with condition that she should pay the dues monthly to said Association from said Westfall; that by dues, it was intended in said deed that said Post should assume all of said Westfall's obligations to said Association under said bond and deed of trust, and pay all of said dues, interest and premiums monthly and pay fines, if any were allowed to accrue, and pay taxes and insurance; that both said Westfall and said Post by the latter's acceptance of said conveyance were under obligations to pay plaintiff said interest, premium, insurance and fines, and that there had been default in such payment by both Westfall and Post under the terms of said bond and trust deed all of said loan had become due and the lien of said trust deed was entitled to be enforced; that defendants Stoddard and Du-Bois had failed and refused to execute said trust for which reason and because of said conveyance to said plaintiff it was advised that it was proper to resort to a court of equity to have the trust enforced and prayed that the said debt of $709.13, as of the 30th day of September, 1898, with a credit of $100.00, as of the ———— day of December, 1898, with addition of twenty-six and two-thirds cents per day from the 30th of September, 1898, until the date of said credit, be decreed against said Westfall and said Post, and that said real estate be sold and the proceeds applied to the payment of said debt, and that it might recover its costs, and for general relief. The defenadant, G. D. Westfall, suggested that plaintiff had not filed any of the exhibits mentioned in its bill and prayed a rule against the plaintiff requiring it to file its exhibits and upon such suggestion and motion of the said defendant the court made an order requiring such exhibits to be filed with the bill by the next morn-

ing. The date of the order does not appear in the record, but as
the exhibits appear embodied in the bill, as the record is made
up, we take it that the order was complied with. There is copied
into the record a paper purporting to be a demurrer on behalf of
defendant, G. D. Westfall, but the record does not show that it
was filed or even tendered for consideration, and no order or de-
cree takes any notice of it. The demurrer is not relied upon or
even mentioned in the brief of counsel for defendant, and being
no part of the record we cannot consider it. *Park* v. *Petroleum
Company,* 25 W. Va. 108. The plaintiff filed an amended and
supplemental bill reiterating the allegations of the original
bill in relation to the loan of the $800.00 to Westfall and the
execution of the bond and deed of trust, and the conveyance of
the real estate to the defendant, Post, with condition that she
pay to plaintiff the obligations of said Westfall under his bond
and deed of trust; that said Westfall had again postponed and
delayed the prosecution of said suit by promises to make set-
tlement of the arrearages and cost and carry on his loan and
payments of interest thereon, and monthly premiums on stock in
accordance with his original contract, but had utterly failed to
do so; that it was informed by said G. D. Westfall that he had
paid said Post all advancements that she had made on said land
and had paid all or nearly all interest, monthly premiums and
dues paid to the plaintiff under said loan and had paid back to
said Post any such premium, interest and dues that she might
have paid under said loan and said Westfall's conveyance to her
of said real estate, and that he was entitled to have said land re-
conveyed to him, and was in fact the *bona fide* owner thereof
as between him and said Post; that said Westfall was still de-
linquent and in arrears in the payment of interest, premium,
dues, taxes, fines and insurance, which he was to pay and keep
paid under said deed of trust and bond filed with the original
bill, and that Post was likewise delinquent, and that plaintiff's
entire debt, under the provisions of said loan, was then due and
payable, and plaintiff was entitled to have a decree for the same,
both against Post and Westfall, and declared a lien against said
land superior to any rights of the said Post to the same, and
filed a statement as an exhibit with said amended and supple-
mental bill, showing a balance due December 29, 1899, of

$697.53, and prayed for a decree for the satisfaction of the same as a lien on said property, and for general relief.

Defendant Westfall filed his separate answer to said original and amended bills admitting that he subscribed for the stock and borrowed the $800.00 and executed the bond and deed of trust to secure the said loan and filed as an exhibit with his answer showing payments made by him on said dues, interest, premium, and fines, which he claimed aggregated the sum of $639.70, and that he paid to said association $4.80 in addition thereto. Defendant further claimed that the Association charged $4.00 per month interest on said $800.00; premiums $4.00 per month, and dues $4.80 per month, which interest, dues and premiums should be applied on said debt; that on the first day of September, 1898, he only owed said Association $317.65 and that he had not owed said Association any other debt since that time; that from the first day of September, 1898, he made default in the payment of the dues, interest, premium and fines and had continued to do so from that time to the present; that under the terms of said deed of trust if default should be made the whole debt should become due and a mere interest bearing fund; that he owed said Association $317.65, with interest from the first day of September, 1898. Respondent denied that he had gained postponement and delay in the prosecution of the suit by promises to make settlement in the arrearages and costs and carry on his loan and payment of the interest thereon and monthly premiums on stock in accordance with his original contract, but had failed to do so and denied the allegation that he had asserted that he had paid Post all advancements as alleged in the bill, and that he was in fact the *bona fide* owner of the land and entitled to have same conveyed to him.

A decree was entered upon the process on the original bill and the amended bill taken for confessed and set for hearing, except as to G. D. Westfall, who filed his aneswer, and the cause was referred to one of the commissioners of the court to ascertain and report the present owner, legal or equitable, of the eleven and one-fourth acres of land in the bills mentioned, the liens thereon and the amounts and priorities, and to whom owing, and any other matters deemed pertinent by him or any of the parties. This decree is dated the 13th day of June, 1900.

The commissioner filed his report bearing date the 2d day of March, 1901, to which report the plaintiff filed the following exceptions: "The plaintiff excepts to the foregoing report; 1st, Because the commissioner has applied all payments made by G. D. Westfall under his contract with plaintiff by which the loan of $800.00 was made to him to interest at six per cent. and to the reduction of said loan. as payments upon said principal interest of allowing premium as agreed between the parties and monthly dues on stock the true balance that should have been found in favor of plaintiff being $670.40 as of the 30th of November, 1899, as shown on the paper 'A' with deposition of J. C. Stoddard. 2nd. Because he has made monthly application of such payments when in fact as shown by said Westfall's pass-book the payments were made principally at two or three times only and in bulk of $100.00, $150.00, etc., at a time. 3rd. Because he has not allowed to plaintiff the 800 fines unpaid or the $10.80 already credited up to him out of the payment he has made. 4th. Because he did not make statement of the calculation by which he arrived at the balance due but at the request of the plaintiff's attorney he, the said commissioner, has furnished said statement and pages of paper and plaintiff asks that this calculation be held as a part of said report. March 2nd, 1901. G. M. Fleming, Atttorney for plaintiff."

The defendant, G. D. Westfall, by his counsel, endorsed his objection to the said exceptions as follows:

"G. D. Westfall says that the first exception should not be sustained because the plaintiff did not fix by its by-laws a minimum premium. See Code 1891, chapter 54, section 26; Code 1899, chapter 54, section 26; *Gray v. B. & L. A.,* 37 S. E. R. 535. That the second exception should not be sustained because the commissioner applied the payments when made and as to the payments of $100.00 and $150.00 he applied them when made and not as stated in said exception. As proof of this he reported as due $423.99 as his calculation made on a basis of monthly applications made as due only $363.44. See statement of such calculation filed by commissioner at request of plaintiff marked Exhibit 'X. Y. Z'." Accompanied by a statement showing regular monthly charges of interest and monthly credits from August, 1894, starting with the sum of $800.00 advanced, and closing with a total balance March 4, 1901, of $363.40.

"That the third exception should not be sustained because plaintiff is not entitled to said $10.80 fines and that the fourth exception should not be sustained because the commissioner is not required to file with his report his calculation.   C. C. Higginbotham, Attorney for G. D. Westfall."

The court entered its final decree after these exceptions and statement by defendant Westfall, date of decree not given, as follows: "It appearing to the court that process in this cause has been duly served on the defendants; that plaintiff's bill was filed at rules, was there taken for confessed and was by the plaintiff set for hearing at rules.   And this cause coming on this day to be heard upon the bill, exhibits therewith, report of Commissioner W. G. D. Totten with exceptions thereto by the plaintiff, which exceptions being considered by the court are overruled, and was argued by counsel for plaintiff.   Upon consideration thereof it is adjudged, ordered and decreed that said report be confirmed.   It is further adjudged, ordered and decreed that G. D. Westfall do pay to the plaintiff the sum of $425.56 with interest from this day and the costs of this suit, which debt and costs are a first lien on the eleven and one-fourth acres with dwelling house thereon, situate on the Staunton and Parkersburg turnpike in Upshur County and conveyed by said G. D. Westfall to Josiah C. Stoddard and Addison G. DuBois by deed of trust dated the 30th day of July, 1894, and shall be first paid out of the proceeds of its sale.   It is further adjudged, ordered and decreed that said G. D. Westfall pay to Franklin Davis Nursery Co. the sum of $111.10 with like interest and that the same is a *second* lien on said eleven and one-fourth acres of land with dwelling house thereon.   It is further adjudged, ordered and decreed that unless said debts and costs shall be paid within sixty days from this date it shall be the duty of G. M. Fleming who is hereby appointed a Special Commissioner for the purpose to sell said parcel of land at the front door of the court house of Upshur County on some court day for said county at public auction to the highest bidder, taking from the purchaser notes with good security, bearing interest from the day of sale and retaining the legal title as a further security until the purchase money is fully paid, after having advertised the time, terms and place of sale of said real estate together with a general description thereof by notice published once a week for four successive

weeks in some newspaper published in said Upshur County." From which decree the plaintiff appealed.

The argument of counsel for the defendant and appellee starts out with this proposition: "All the points to be discussed in this case veer to the central question involved, viz., was the loan by appellant to G. D. Westfall usurious?" Has the question of usury been fairly raised in the cause? Section 6, chapter 96, Code. provides: "Any defendant may plead in general terms that the contract or assurance on which the action is brought was for the payment of interest at a greater rate than is allowed by law, to which plea the plaintiff shall reply generally, but may give in evidence upon the issue made up thereon any matter which could be given in evidence under a special replication." Webb on Usury in section 405, page 468, says: "The defense of usury must be pleaded or it cannot be relied on at the hearing; and where advantage is sought of usury in a foreclosure proceeding it should be pleaded in the answer and it cannot be properly exhibited in a cross bill." In *Chambers* v. *Chalmers*, 4 Gill. & Johns, it is held, that, "Where a bill for the specific execution of a contract states a case which may or may not be usurious, according to the facts which really exist in the case the statute of usury must be pleaded or relied upon in the answer or it will not avail the defendant. The rule might be different if the bill stated a usurious contract which no inference or intendment can help." First Beach Modern Eq. Pr., section 349, says: "There can be no doubt that usury may be pleaded or relied upon in the answer, which must set out with precision and accuracy the particular facts and circumstances of the supposed usurious agreement that the court may see that it was in violation of the statute. The terms of the usurious contract and the *quantum* of the usurious interest or premium must be specified and distinctly and correctly set out." And cases cited. The subject of pleading usury is fully discussed and many authorities cited in Tyler on Usury, pages 458-63. The particularity and precision of the pleading of facts constituting usury is not required under our statute as in most of the authorities cited, but "The defendant may plead in general terms that the contract or assurance on which the action is brought was for the payment of interest at a greater rate than is allowed by law, and this is sufficient in an answer to raise the question of usury

in a court of equity." 1 Hogg's Eq. Prac., section 436, citing
*Brakeley* v. *Tuttle,* 3 W. Va. 86, 131. Upon inspection of the
answer defendant Westfall filed in this cause, it will be seen that
he makes no specific allegations or averment of usury in the con-
tract involved. He nowhere says that the plaintiff charged in said
contract, a greater rate of interest than is allowed by law. He con-
tents himself with merely stating the amount of interest, pre-
mium and dues paid under such contract, which would indicate
that he was merely describing the contract as a building and loan
contract and says that the payment of such interest, dues and
premium should be applied on said debt of $800, but gives no
reason for any such application. He seems to have studiously
avoided making any charge of usury against the plaintiff. He
nowhere in his answer shows any reason why the contract is
not a valid, honest building and loan contract authorized by the
statute. He says in his answer, "This defendant further says
that under the terms of said deed of trust if default should be
made the whole debt should become due and a mere interest
bearing fund. The defendant further says that he only owes
said Association $317.65 with interest from the first day of
September, 1898." He does not show, nor attempt to show in
his answer, why or how he owes the Association only the sum
specified. "The plea of usury (apart from fraud) must con-
form to the statute, where, as a defense, it has been made the
subject of special litigation. But where property is sold on an
usurious mortgage, and the proceeds are in court for distribu-
tion, the defense of usury need not be raised by special plea."
End. on Building Assns., section 378. And has been cited in
Webb on Usury, "The defense of usury must be pleaded or it
cannot be relied on at the hearing" in a suit brought directly
against the defendant by the creditor upon the alleged usurious
claim; yet in a creditor's suit against a debtor where creditors
not named as parties in a suit, but are brought in by being con-
vened to make their claims before a commissioner against the
defendant, the latter may raise the question of usury by excep-
tions to the commissioner's report. *Barber* v. *Tompkins,* 31 W.
Va. 410. See also Webb on Usury, section 407, page 470, where
it is said: "It may be relied upon before a commissioner, and
if the commissioner audits a usurious debt against a debtor, and
he has not raised such defense in any other mode in the suit,

he must in a written exception to the report signed by the counsel or himself, clearly and distinctly except on the ground that in the report interest has been charged against him in excess of what the law allows." Citing *Barber* v. *Tompkins.* The defendant, Westfall, having filed his answer and failed to make any defense of usury, could not raise the question of usury in the vague and uncertain manner it is supposed to be raised in his written reply to the exceptions taken to the commissioner's report by the plaintiff. In permitting the cause to be finally heard upon his answer herein, he failed to make the defense of usury, and waived his right to make such defense, and the question not having been raised by the pleadings in the cause it was error for the commissioner to base his calculations of interest on the theory that the debt of $800.00 was a straight loan at six per cent. interest, and the exceptions taken by the plaintiff to the commissioner's report should have been overruled and a decree entered in favor of the plaintiff for the amount due to it at the time of the entering of the decree according to the terms of the contract sued upon. The decree is further erroneous in that it does not direct the terms of the sale to be made, whether for cash or on credit, and terms, as provided in section 1, chapter 132, Code.

For the reasons stated the exceptions of the plaintiff to the commissioner's report are sustained, the decree of the circuit court is reversed and annulled and the cause remanded to the circuit court of Upshur County, with directions to ascertain the true amount due to the plaintiff on account of the said loan according to the terms and provisions of the bond and deed of trust securing the same, and to enter a decree therefor, together with provision for the sale of the eleven and one-fourth acres of land to satisfy the decree in case it shall not be paid within the time to be fixed by the court for the payment thereof.

*Reversed.*